UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re: OnStar Contract Litigation                Case No. 2:07-MDL-01867

                                                 Honorable Sean F. Cox

_____/

## OPINION & ORDER
## GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTIONS TO DISMISS

Buyers and lessees of automobiles equipped with OnStar telematics brought prospective

class action complaints against four automobile manufacturers and OnStar Corporation, asserting

consumer protection act and warranty claims.  The actions were consolidated for pretrial

proceedings by the Judicial Panel on Multidistrict Litigation.  After the complaints were

combined in a Master Amended Complaint, Defendants filed the instant Motions to Dismiss.

The parties have fully briefed the issues and oral argument was heard on December 18, 2008.

For the reasons that follow, the Court shall: 1) grant the motions in part, 2) deny them in part,

and 3) decline to rule on those challenges that require a conflicts of law determination because a

conflicts of law determination would be premature at this stage of the litigation.

BACKGROUND

Plaintiffs filed their "Master Amended Class Action Complaint" (hereinafter "the MAC")

on February 25, 2008, asserting claims against the following five defendants: 1) General Motors

Corporation ("GM"); 2) Volkswagen Group of America ("VW"); 3) American Honda Motor

Company ("Honda"); 4) Subaru of America ("Subaru"); and 5) OnStar Corporation ("OnStar").

For ease of reference, the MAC refers to Defendants GM, VW, Honda and Subaru, collectively, as the "Manufacturer Defendants." The MAC contains the following five counts: "Violations of the Michigan Consumer Protection Act" (Count I), asserted against all five Defendants (MAC at 43); "Violation of All States' Consumer Protection Acts" (Count II), asserted against all five Defendants (MAC at 45); "Breach of Express Warranty" (Count III), asserted against the Manufacturer Defendants (MAC at 52); "Breach of Implied Warranties" (Count IV), asserted against the Manufacturer Defendants (MAC at 53); and "Violation of The Magnuson-Moss Warranty Act" (Count V), asserted against the Manufacturer Defendants (MAC at 54). Thus, all five counts are asserted against GM, VW, Honda and Subaru while only Counts I and II (i.e., consumer protection act claims) are asserted against OnStar.

The following are some of the most pertinent allegations contained in the MAC, to provide a brief overview of the Plaintiffs' theories and alleged damages. Plaintiffs bring this purported nationwide class action against Defendants "due to the failure of analog OnStar equipment in their vehicles and the resulting termination of OnStar service." (MAC at ¶ 1).

Plaintiffs allege that "OnStar is a unique in-vehicle telecommunication safety system that provides automatic crash notification to emergency responders, stolen vehicle location, remote door unlock and remote diagnostics in the event of problems with airbags, anti-lock brakes or other systems. According to OnStar:

> [OnStar provides] critical communications links among members of the public, emergency medical service providers and emergency dispatch providers; public safety, fire service and law enforcement officials, and hospital emergency and trauma care facilities.
> * * *
> The life-savings benefits of OnStar are intended not only for initial vehicle purchasers but also for subsequent owners over the life of the vehicle.

2

(MAC ¶ 2). "OnStar equipment and service for Manufacturer Defendants' vehicles is unique and is not available from other sources or as an after-market product." (MAC at ¶ 49).

"In 2002 Defendants' OnStar equipment relied on analog cellular signals to function." (MAC at ¶ 4). "In August 2002, the Federal Communications Commission ("FCC") ruled that cellular telephone companies need not continue to carry analog cellular signals. The FCC allowed for a 'sunset' period to allow companies whose products were reliant upon analog signals to transition to digital equipment." (MAC at ¶ 3). Defendants' respective statements made to the FCC are alleged in paragraphs 60 through 74 of the MAC.

"All of the Defendants knew by August 2002 that their analog-based OnStar equipment would stop working on February 18, 2008. Despite the knowledge that their equipment would stop working in 2008, Defendants continued to sell analog equipment to customers without notifying those customers that the equipment would cease to function. Defendants intentionally concealed from consumers the material fact that their equipment would stop working on February 18, 2008." (MAC at ¶ 5). "After selling consumers equipment they knew would stop working, Defendants belatedly began warning consumers that their equipment was going to stop working by February 2008. Defendants required those customers whose equipment could be upgraded to a digital signal to pay for such upgrades to keep their OnStar equipment working." (MAC at ¶ 6)

"Because of Defendants' intentional concealment of the material fact that the equipment they sold to consumers would stop working in 2008, hundreds of thousands of consumers across the county either have equipment that is now useless or have paid to purchase new digital equipment." (MAC at ¶ 7). "As a result of the Defendants' actions, Plaintiffs and thousands of

3

other owners and lessees of OnStar equipped vehicles have lost the benefits of this safety system and are exposed to an increased risk of serious personal injury and harm, or were forced to pay for upgrades to keep their systems functioning.  Plaintiffs seek damages for themselves and all others similarly situated."  (MAC at ¶ 8).

The damages alleged by a particular plaintiff depend on the type of OnStar hardware that was installed in that plaintiff's vehicle.  "At various times, OnStar capable vehicles were equipped with three types of wireless cellular equipment: a) Analog-Only; b) Analog/Digital-Ready; and c) Dual-Mode (Analog/Digital)."  (MAC at ¶ 53).  "Vehicles with analog-only equipment were manufactured to operate only on analog wireless networks.  The Defendant Manufacturers are not offering their customers any opportunity to upgrade analog-only equipment to operate on digital networks.  Analog-only telematics ceased working on or about December 31, 2007."  (MAC at ¶ 54).  Vehicles with analog-digital-ready equipment can be converted to operate on digital networks, and the Defendant Manufacturers are charging those customers a $15.00 fee to upgrade their equipment and requiring them to enter into a service agreement for additional years.  (MAC at ¶¶ 55 and 109).[1]

Standard of Decision:

The Supreme Court has recently clarified the pleading standard necessary to survive a Rule 12(b)(6) motion.  *Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008)(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  Factual allegations contained in a complaint must "raise a right to relief above the speculative level."  *Id.*  "Twombly does not

---

[1]Those consumers with Dual-Mode hardware can use their existing OnStar equipment with digital signals.

4

'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Id*. In reviewing a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.

ANALYSIS

A.   A Choice of Law Determination:

As a preliminary matter, Defendants request that, in order to rule on the pending motions, the Court engage in a choice-of-law analysis to determine the law that is to be applied to Plaintiffs' claims. Plaintiffs respond that a choice-of-law analysis would be premature and take the position that the Court need not engage in such an analysis before ruling on the pending motions.

It is well established that a district court sitting in diversity normally applies the substantive law, including the choice-of-law rules, of the forum state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

In this MDL proceeding, however, this Court is presiding over several diversity actions that have been transferred to this district, pursuant to 28 U.S.C. § 1407(a), for the purpose of conducting consolidated pre-trial proceedings. Although some of the actions were originally filed in Michigan, actions from other states, including California, New Jersey, Illinois, Louisiana, South Carolina, Ohio, and Pennsylvania, were transferred to this district by the MDL Panel.

"Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied." *In re Air Disaster at Ramstein Air Base, Germany*, 81

5

F.3d 570 (5th Cir. 1996)(citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)); *see also* Multidistrict Lit. Man. § 9:18 (2008)("In diversity cases, the court will apply the law of the transferor forum, by application of its choice-of-law rules."). This means that, in order to engage in a choice-of-law analysis in this case, this Court would need to consider and apply the choice of law rules of numerous states.

In the pending motions, the parties have raised the issue and made limited arguments in support of their respective positions. The Court concludes, however, that the limited arguments made are not sufficient to enable this Court to engage in a meaningful conflicts of law analysis at this time. Moreover, due to the nature of their position on the issue, Plaintiffs assert that they need some limited discovery before they can fully brief the conflicts issue. Thus, the Court concludes that a choice-of-law analysis would be premature at this juncture.

Accordingly, the Court will proceed to analyze only those grounds for relief that do not require a conflicts of law analysis before they can be addressed.

Nevertheless, even Plaintiffs acknowledge that a conflicts of law determination should be made before the Court makes a class certification ruling in this matter. At the December 18, 2008 hearing, Plaintiffs' counsel indicated that Plaintiff would need limited discovery on the conflicts of law issue. Plaintiff identified, on the record, the limited discovery that it would require. Defense Counsel took the position that Defendants would need little, if any, discovery on the issue. To enable this matter to proceed efficiently, the Court shall order that the parties may obtain discovery on the conflicts of law issue during the pre-certification discovery period.

Each party should then file a brief stating its position with respect to the conflicts of law issue within 21 days after pre-certification discovery ends. Each party should file a "stand-alone"

6

brief (i.e., a brief that does not incorporate or adopt other parties' arguments.)  The opening briefs shall be no more than 20 pages in length.  Response briefs of no more than 20 pages may be filed within 21 days of service of opening briefs, and reply briefs of no more than 5 pages may be filed within seven days after service of response briefs.

B.      Challenges To Count I ("Violations of the Michigan Consumer Protection Act"):

Count I of the MAC asserts a claim under the Michigan Consumer Protection Act, M.C.L. §445.901 *et seq*. ("the MCPA").  The MCPA provides, in pertinent part, that "A person who suffers loss as a result of a violation of this act may bring a **class action on behalf of persons residing or injured in this state**" for the actual damages caused by certain delineated practices.  M.C. L. § 445.911(3)(emphasis added).

As Defendants note, the MAC does not allege that any of the named plaintiffs reside in Michigan; nor does it allege that any of the named plaintiffs purchased or leased their vehicles in Michigan.  Although they advance slightly differently arguments, each of the Defendants contend that the named plaintiffs cannot pursue a class action MCPA claim in light of the above provision.

Having considered the parties' respective arguments on this issue, the Court concludes that the named Plaintiffs, who all reside outside of Michigan and purchased or leased their vehicles outside of Michigan, cannot pursue a class action MCPA claim because the statute, by its express terms, limits such a class to persons residing or injured in Michigan.

In *Highsmith v. Chrysler Credit Corp*., 150 B.R. 997 (N.D. Ill. 1993), the district court considered this very issue.  In that putative class action, automobile lessees asserted several claims, including a MCPA claim.  In ruling upon the defendant's Motion to Dismiss, the trial

7

court dismissed the MCPA claim.  After citing the relevant portion of the statute, the court stated that "[t]he Michigan Act only allows class actions to be brought on behalf of persons residing or injured in Michigan.  Since neither the Highsmiths nor Mr. Villasenor [the named plaintiffs,] was injured or resides in Michigan, they are not proper class representatives for the only class of persons authorized by the Michigan Act."  *Id*. at 1007.

The district court further rejected the plaintiffs' attempt to fall under the statute by arguing that a person who remits money to a business headquartered in Michigan is "injured" in Michigan for purposes of the statute:

> Plaintiffs next attempt to fall under the statute by arguing that a person who remits money to a business headquartered in Michigan is 'injured' in Michigan and that Chrysler Credit's receipt of ill gotten gains in Michigan causes injury to consumers residing elsewhere.  Plaintiffs go too far in stretching the definition of 'injured.'  Plaintiffs' interpretation would read the limitation of 'residing or injured in this state' in subsection (3) out of the statute by permitting plaintiffs in all 50 states to bring class actions under the Michigan Act.  The Michigan legislature has limited class actions under the MCPA to suits brought by persons 'residing or injured in' Michigan.  Merely transmitting money to Michigan does not amount to being 'injured' in that state.

*Id*. at 1007.  Accordingly, the district court dismissed the MCPA claim.

The United States Court of Appeals for the Seventh Circuit affirmed that ruling by the district court:

> Additionally, the Highsmiths, as well as Mr. Villasenor, allege that the lease provisions violate the Michigan Consumer Protection Act.  Mich.Comp. Laws §§ 445.901-922 (1989).  The district court dismissed these claims as against all plaintiffs.  For the reasons stated in the district court opinion, 150 B.R. 997, 1007-08 (N.D. Ill. 1993), we affirm that ruling.

*Highsmith v. Chrysler Credit Corp*., 18 F.3d 434, 441 n.4 (7th Cir. 1994).

The Court concludes that the same result must occur here, where this purported class

8

action seeks to pursue a MCPA claim, although none of the named plaintiffs reside in Michigan or were injured in Michigan. The Court therefore concludes that the named Plaintiffs in the MAC cannot pursue a class action claim for alleged violations of the MCPA.

C.   Challenges To Count II ("Violation of All States' Consumer Protection Acts"):

In Count II, Plaintiffs assert consumer protection act claims under the individual consumer protection acts of each state.

1.   Challenges Based On Statutes Of Limitations:

In their respective motions, Defendants challenge the consumer protection act claims of several of the named plaintiffs as untimely.

In response, Plaintiffs appear to acknowledge that without the application of a discovery rule, or tolling of the particular statute of limitation due to fraudulent concealment, the consumer protection claims of several named Plaintiffs would be time-barred. Plaintiffs have alleged, however, that a discovery rule should be applied under the circumstances of this case and that fraudulent concealment tolled the various statutes of limitation. (MAC at ¶¶ 166-168). Plaintiffs contend that whether or not a discovery rule can be applied under the facts of this case, and whether the various statutes of limitation should be tolled due to fraudulent concealment, are issues that should be determined on a motion for summary judgment following discovery, not on a motion to dismiss based on the pleadings.

The Court agrees. Accordingly, the Court shall deny the various requests for dismissal based on statute of limitations grounds.

2.   Other Challenges Made By OnStar:

OnStar also asserts additional challenges to Count II.

9

a.    Have Plaintiffs Adequately Alleged A Consumer Protection Claim Against OnStar?

OnStar contends that the consumer protection act claims asserted against it, apparently under each of the 50 acts, fail to allege a viable claim against it.  Noting that Plaintiffs' consumer protection act claims include allegations that Defendants engaged in unfair and deceptive acts and practices, OnStar contends that FED. R. CIV. P. 9(b) "requires that Plaintiffs plead OnStar's allegedly fraudulent conduct with particularity.  To support this argument, OnStar relies on Rule 9(b) and *Metropolitan Prop. & Cas. Ins. Co. v. Bell*, 2005 U.S. App. LEXIS, at * 16 (6th Cir. 2005).  That case, however, is an unpublished decision and deals only with the Tennessee Consumer Protection Act.

Citing *Michels v. Monaco Coach Corp.*, 298 F.Supp.2d 642 (E.D. Mich. 2003), Plaintiffs make the point that not all consumer protection act claims need be premised on fraud, and therefore pleaded with particularity.  For example, in *Michels*, the Honorable Patrick Duggan noted that the MCPA prohibits a range of conduct, and ruled that the plaintiff's MCPA claims based on express and implied warranties did not need to be pleaded with particularity.  Plaintiffs assert that their various consumer protection act claims, to the extent that they are premised upon warranty theories, need not be pleaded with particularity.  (Pls.' Br. at 29).

Plaintiffs claim that to the extent their consumer protection act claims are based upon fraud, they have met the pleading standard.  Plaintiffs emphasize that Rule 9(b) is intended to give Defendants fair notice of the circumstances giving rise to the fraud claim.  They contend that the allegations here give GM and OnStar fair notice of the fraud theories asserted against them, and note that GM and OnStar had sufficient notice of the claims such that they were able to

10

answer a previous complaint in this litigation.

The Court shall deny this ground for relief.  Plaintiffs' consumer protection act claims are based upon several theories, including warranty theories,[2] and such claims need not be pleaded with particularity.  Moreover, as Plaintiffs note, the "Sixth Circuit has rejected a strict reading of Rule 9(b)."  *Ballan v. UpJohn Co.*, 814 F.Supp. 1375, 1385 (W.D. Mich. 1992)(citing *Michaels Building Co. v. Ameritrust Co.*, 848 F.2d 674 (6th Cir. 1988).  The purpose underlying the requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading.  *Michaels, supra*, at 679.  The Court is satisfied that the MAC is sufficiently detailed to enable OnStar to satisfy the notice requirement and allow it to file an answer. OnStar, and the other Defendants, can obtain further information regarding Plaintiffs' fraud claims during discovery.

    b.    Can OnStar Be Held Liable For Any Other Defendant's Conduct?

Next, OnStar notes that Plaintiffs, in the MAC, allege two bases for creating joint liability among OnStar and the other Defendants in this action: 1) by alleging that OnStar is a wholly-owned subsidiary that is expressly and impliedly controlled and directed by GM; and 2) by alleging that OnStar engaged in "co-ventures" with each of the Manufacturer Defendants.  (MAC at ¶¶ 39-40).  OnStar claims that these "bare allegations" do not state a claim for joint liability under the pleading standards.  They assert that making a "passing reference" to alleged "co-

---

[2]While the MAC complaint does not assert Counts II and IV against OnStar, the Court does not believe that fact alone precludes Plaintiffs from pursing a consumer protection act claim against OnStar on a warranty theory. The Court notes that OnStar asserted, for the first time in its Reply Brief, that any warranty theory asserted against OnStar would fail given disclaimers in its Terms and Conditions.  Such a challenge, however, is more properly raised in a motion for summary judgment.

11

ventures" is insufficient and state that Plaintiffs make no factual allegations regarding the

existence of any type of partnership or joint venture between OnStar and the other Defendants.

The Court finds this argument without merit.  Plaintiffs have alleged that joint ventures

existed between OnStar and the other Defendants.  OnStar has not identified any heightened

pleading standard for pleading a joint venture.  If there is no basis for finding a joint venture,

Defendants can obtain that information during discovery and seek summary judgment on the

issue.  However, the Court does not believe that this is an issue the Court can resolve at the

pleading stage.

3.  Honda's Other Challenges:

a.  Do The Honda Plaintiffs' CPA Claims Fail As Inconsistent With The Terms Of The Express Warranty?

Honda notes that the named Honda-Plaintiffs assert consumer protection act claims under

the consumer protection acts of their respective home states of California (the Gills), New York

(Allenson) and Washington (Kuller).  Honda appears to take the position that the Court should

dismiss those claims based upon *Perkins v. DaimlerChrysler Corp*., 890 A.2d 997 (N.J. Super.

Ct. App. Div. 2006).  In *Perkins*, the trial court dismissed the plaintiffs' claims under the New

Jersey Consumer Fraud Act for failure to state a claim.  The trial court concluded, and the

appellate court affirmed, that the manufacturer's failure to advise the vehicle owner that her

exhaust manifold may breakdown or require repair after the expiration of the warranty period did

not constitute a violation of the act.

Honda contends that consistent with the reasoning in *Perkins*, "courts in California, New

York, and Washington, have rejected claims under their state's consumer protection acts based

on claims that are – as here – inconsistent with the terms of the plaintiff's warranty." (Honda's Br. at 13). It then discusses cases dealing with each of the acts at issue.

1)  California

To support their position that Plaintiffs' claim under the CLRA and/or UCL fails to state a viable claim, Honda relies on *Daugherty* and *Bardin*. *Daugherty* was a putative class action wherein plaintiffs asserted a breach of express warranty claim against an automobile manufacturer. *Daugherty v. American Honda Motor Co.*, 144 Cal.App.4th 824 (2006). In that case, the plaintiffs alleged that the manufacturer breached its express warranty by failing to disclose an engine defect that did not cause malfunctions in the automobiles until long after the warranty expired. The court dismissed the express warranty claim under the general rule that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed. *Id*. at 830-32.

The plaintiffs in *Daugherty* also asserted a claim under the CLRA, alleging that Honda violated the CLRA by concealing and failing to disclose the engine defect and by continuing to market and sell defective vehicles notwithstanding knowledge of the defect. After dismissing the express warranty claim, the court also dismissed the CLRA claim, stating "[w]e agree with the trial court that these allegations do not state a violation of the CLRA." *Id*. at 834. The court explained as follows:

> In short, although a claim may be stated under the CLRA in terms of constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact defendant was obliged to disclose. In Daugherty's case, no representation is alleged relating to the F22 engine, which functioned as warranted. Accordingly, no claim has been stated.

13

*Id*. at 835.  The *Daugherty* court relied heavily on *Bardin*, which had reached the same

conclusion. *Bardin v. DaimlerChrylser Corp*., 136 Cal.App.4th 1255, 1276.

In response, Plaintiffs contend that Honda's challenges based on *Daugherty* and *Bardin*

lack merit, in light of *Falk*.  *Falk v. General Motors Corp*., 496 F.Supp.2d 1088 (N.D. Calf.

2007).  The plaintiffs in *Falk* purchased vehicles with allegedly defective speedometers[3]

asserting, on a class action basis, claims under California's CLRA and UCL, as well as fraud by

omission and unjust enrichment claims.  The manufacturer defendant filed a motion to dismiss,

seeking to dismiss the CLRA claim based on *Daugherty* and *Bardin*, but the trial court denied the

motion with respect to the CLRA, UCL and fraud by omission claims.

The *Falk* court stated that plaintiffs could "successfully pursue a CLRA claim, despite

*Daugherty* and *Bardin*, if [defendant] was 'obliged to disclose' the potential for problems with

the speedometers in certain vehicles."  *Falk, supra* at 1094-95.  The court then explained that a

failure to disclose can constitute actionable fraud in the following four circumstances:  (1) when

the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had

exclusive knowledge of material facts not know to the plaintiff; (3) when the defendant actively

conceals a material fact from the plaintiff; and (4) when the defendant makes partial

representations but also suppresses some material fact.  *Id*. at 1095.  Plaintiffs assert that they

state a valid CLRA claim here under the second, third and fourth circumstances noted above

from *Falk.*

Plaintiffs also take the position that Honda's challenges based on *Daugherty* and *Bardin*

_____

[3]In the case of each plaintiff, the speedometer on his or her vehicle ceased to function
properly after the expiration of the vehicles's durational warranty.

lack merit, under *Falk*, because when safety issues are presented, courts have sustained claims

and distinguished those cases. *Falk v. General Motors Corp*., 496 F.Supp.2d 1088 (N.D. Calf.

2007). In *Falk,* the court stated as follows with respect to allegations concerning safety:

> Moreover, plaintiffs successfully allege that the potential for failed speedometers
> constitutes a safety hazard. *Daugherty* stated that the "unreasonable risk alleged
> is merely . . . the cost of repairs in the event the defect ever causes an oil leak."
> *Daugherty*, 144 Cal.App.4th at 836, 51 Cal.Rptr.3d 118. Here, plaintiffs allege a
> far greater risk: the risk of inadvertent speeding, driving at unsafe speeds, and
> accidents. These risks are far more "unreasonable" than the monetary
> consequences in *Daugherty*, and further strengthen plaintiffs' arguments that their
> speedometers were truly defective. Plaintiffs therefore state sufficient facts to
> survive a Rule 12(b)(6) motion to dismiss on their allegation of defective
> speedometers.

*Falk,* 496 F.Supp.2d at 1096 n.*

Plaintiffs do allege, in the MAC, that "OnStar is a unique in-vehicle telecommunication

safety system that provides automatic crash notification to emergency responders . . . remote

diagnostics in the event of problems with airbags, anti-lock brakes or other systems." (MAC at ¶

2). The MAC further alleges that "[a]s a result of Defendants' actions, Plaintiffs and thousands

of other owners and lessees of OnStar equipped vehicles have lost the benefits of this safety

system and are exposed to an increased risk of serious personal injury and harm . . ." (MAC at ¶

8). Thus, the Court concludes that Plaintiffs' allegations concerning safety are sufficient, under

*Falk*, to enable it to survive a motion to dismiss under Rule 12(b)(6).

### 2)   New York

Honda contends that Plaintiffs' claims under the New York statute should be dismissed

where a  seller omits mention of a known risk of eventual product failure beyond the warranty

period.

15

In *Against Gravity Apparel, Inc. v. Quarterdeck Corp.*, 699 N.Y.S.2d 368, 369 (App. Div. 1999), the main case that Honda relies on in seeking to dismiss the claims under the New York statute, the plaintiff brought suit arising out of its purchase of computer software that was not Y2K compliant.  In a decision that consists of two paragraphs, the court held that the plaintiff's claims were properly dismissed.  With respect to the dismissal of the claim under General Business Law § 349, the court found the claim was properly dismissed in light of the language on defendant's disclaimer.  The Court does not find that case, which due to its length provides little analysis, as persuasive support of Honda's position.  The Court shall deny Honda's request to dismiss the claims asserted under the New York statute based on the pleadings.

3) <u>Washington</u>

Honda cites only *Hertzog v. WebTV Networks, Inc.,* 2002 WL 1609032 (Wash.App. Div. 1), an unpublished opinion, in support of its request to dismiss Plaintiffs' claims under the Washington Consumer Protection Act.   Moreover, in *Hertzog,* the trial court dismissed the consumer protection act claim at the summary judgment stage – not in relation to a motion to dismiss.  The Court denies Honda's request for dismissal of the claim under the Washington Consumer Protection Act.

<u>   4. Subaru's Other Challenges</u>:

  a. <u>Do Plaintiffs' Fraudulent Non-Disclosure Theories Against Subaru Fail Because Plaintiffs Had Constructive Notice Of The FCC Rulings?</u>

Subaru asserts that "Plaintiffs' main contention in this case – that Subaru and other motor vehicle manufacturers failed to disclose that the FCC rule making might enable cellular carriers to discontinue analog service, which would in turn result in interruption of the service and

16

obsolescence of the subject equipment - is a non-starter, *because this information was provided at the time of sale.  MAC ¶¶ 3, 4, 82-84.*"  (Subaru's Br. at 17).  Subaru contends that "Plaintiffs may not be heard to state such a claim on the pleadings because they admit in the MAC that they did actually receive OnStar services literature, which contains the very information that the plaintiffs claim they did not receive."  (*Id.*).  Notably, Subaru does not cite any analogous cases, or other authority, to support its position that the OnStar disclosure standing alone requires dismissal of the consumer protection act claims.

Subaru asserts that Plaintiffs are charged with constructive notice of the FCC's published rulings and statements.  It asserts that publication in the Federal Register is sufficient to give notice of the contents of the documents to a person subject to or affected by it, citing: 1) 44 U.S.C. § 1507; 2) *Roudnahal v. Ridge*, 310 F.Supp.2d 884 (N.D. Ohio 2003); and 3) *Deverant v. Selective Ins. Co.*, 2004 LEXIS 8978 (E.D. PA. Mar. 25, 2004).[4]

Subaru claims that, by operation of law, Plaintiffs presumptively received specific notice that: 1) their vehicles were equipped with OnStar equipment that relied upon analog signals; 2) the FCC issued a rule that afforded analog wireless carriers the option to discontinue support of analog signals; and 3) if the wireless carriers ceased support of the analog signals, the OnStar service would no longer be available.  (Subaru's Br. at 19).  It asserts that "in September 2002 every owner is presumed by law to know that an FCC rule change might permit carriers to stop maintaining analog signals if they chose to do so on the proposed sunset date of February 18, 2008.

Plaintiffs respond that their consumer protection act claims are based on a fraudulent

---

[4]Neither of these cases involves facts similar to those presented here.

disclosure and non-disclosure of information essential to permit Plaintiffs to make an informed decision with regard to purchasing an OnStar unit.   Plaintiffs assert that the disclosure referenced in the OnStar Terms and Conditions is not adequate for a number of reasons.  First, they assert that the provision at issue is buried in the middle of a full page of small point type, and appears in a paragraph labeled "hardware."  Plaintiffs contend that the Court cannot determine, in the context of a motion to dismiss, that this disclosure is sufficient to defeat Plaintiff's consumer protection act claims.

Plaintiffs also note that the disclosure at issue was not provided prior to the sale of the OnStar equipment.  Moreover, they contend that even the disclosure that was provided at or after the sale failed to inform Plaintiffs that their equipment would cease functioning.  Rather, the information Plaintiffs received was that their OnStar units used *"either analog or digital signals"* (i.e., it just advised that their equipment used one of those two types).  (Pls.' Resp. at 19). Plaintiffs assert that the notices therefore fail to put Plaintiffs on constructive notice that their OnStar equipment would be obsolete.  (Pls.' Br. at 20).

The Court agrees with Plaintiffs that this Court cannot, on a motion to dismiss brought under FED. R. CIV. P. 12(b)(6), dismiss Plaintiffs' consumer protection act claims on this challenged ground.

b.   Do Plaintiffs' CPA Claims Against Subaru Fail As Being Predicated Upon An Unsustainable Breach of Warranty Claim?

Subaru also asserts that Plaintiffs cannot proceed with their consumer fraud claims where the underlying basis for the claim is an unsustainable cause of action.  Subaru cites two New Jersey decisions for this general proposition: 1) *Sickles v. Cabot Corp.*, 379 N.J. Super. 100

18

(2005); and 2) *Henderson v. The Hertz Corporation*, 2005 WL 4127090 (N.J. Super. 2005). One of those decisions is unpublished, and neither decision involves facts similar to those presented in this case.

Subaru contends that Plaintiffs' consumer protection act claims must be dismissed because a plaintiff cannot recast an invalid warranty claim as a consumer protection act claim. Subaru primarily relies on *Perkins* to support this position.

In response, Plaintiffs note that their consumer protection act claims are not solely based upon Defendants' breach of express warranty.

As even the authorities cited by Subaru note, "a motion for failure to state a claim in the context of the Consumer Fraud Act should be approached 'with hesitation.'" *Henderson, supra*, at *4. Here, unlike the decisions cited by Subaru, Plaintiffs' consumer protection act claims are not premised solely upon an unsustainable breach of express warranty claim. The Court shall therefore deny this ground for relief.

     5.    <u>VW's Other Challenges</u>:

In Count II of the Master Complaint, Plaintiffs assert consumer protection act claims under various state statutes. Thus, the consumer protection act claims asserted against VW include claims brought under: 1) California's Consumers Legal Remedies Act, Cal. Civ. Code §1750 *et seq*. ("the CLRA")(Master Complaint at 45); 2) the Colorado Consumer Protection Act; and 3) the New York General Business Law.

     a.    <u>Can VW Plaintiffs Haywood And Golish Maintain A Claim Under The CLRA Absent A "Transaction" Between Either California Plaintiff And VW?</u>

Plaintiffs Haywood and Golish reside in California (Master Compl. at ¶¶ 27 & 28). The

Master Complaint alleges that Golish purchased a new 2005 Volkswagen Phaeton with manufacturer installed OnStar telematic equipment from Commonwealth VW in Costa Mesa, California. (Master Compl. at 150). It alleges that Haywood purchased a "new 2004 Volkswagen Passat with manufacturer installed OnStar telematic equipment from Timmons Volkswagen in Long Beach, California." (*Id*. at 152).

VW contends that in order for the CLRA to apply, the plaintiff and defendant must engage in a "transaction," expressly defined as "an agreement," between the parties. VW notes that Plaintiffs Haywood and Golish purchased their vehicles from authorized dealers who are not parties to this action and assert that the "Master Complaint alleges no agreement between any Plaintiff and [VW]." (VW's Br. at 8). VW asserts that since neither Haywood nor Golish participated in any "transaction" with VW within the meaning of the CLRA, their claims under the statute must be dismissed.

In response, Plaintiffs claim that VW's position is "not supported by applicable law; it appears that VW has simply invented this requirement." (Pls.' Resp. to VW's Motion at 5). VW correctly notes that the two cases cited by VW in their opening brief do not discuss a transaction requirement. Plaintiffs further assert that "[e]ven if this Court should decide to break new ground and require a 'transaction' under the CLRA, Plaintiffs Haywood and Golish suggest that the new requirement is met by the existence of an express warranty between Plaintiffs and VW." (*Id*.) Plaintiffs assert that California courts have found than express warranty relationship is enough to create privity for an implied warranty, and such a relationship should also be sufficient to establish a "transaction" for purposes of the CLRA. To support this position, Plaintiffs rely on *Atkinson v. Elk Corp. of Texas*, 142 Cal.App.4th 212, 229 (2006), wherein the court noted that

20

express warranties are "basically contractual in nature" and found that a manufacturer "brought itself into privity of contract with the ultimate consumer, Atkinson, by extending [an] express warranty."

The Court agrees that this ground for relief is without merit.   The CLRA provides that certain delineated "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful.  Cal. Civ. Code §1770(a).

As an initial matter, the CLRA expressly provides that it "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."  Cal. Civ. Code § 1760.  In addition, the CLRA "provides a broad definition of 'transaction'" as "an agreement between a consumer and any other person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement."  *Wang v. Massey Chevrolet*, 97 Cal.App.4th 856, 869 (2002); Cal. Civ. Code § 1761(e).

VW's request for dismissal of Plaintiffs' CLRA claim relies exclusively on the statutory language regarding a "transaction."  VW has not directed the Court to any cases which have addressed the issue of whether a plaintiff can maintain a CLRA claim where the consumer purchased a vehicle from a third party, but obtained an express warranty on the vehicle from a manufacturer.  In light of the absence of any such authority, the Act's requirement that it be construed liberally, and the broad definition of "transaction," the Court decline to dismiss the CLRA claims asserted by Haywood and Golish.

b.    Can Schatz Assert His Count II Damage Claim Under The Colorado CPA
On Behalf Of A Class?

The section of the Colorado Consumer Protection Act that pertains to damages provides,

in pertinent part, that:

> (2) Except in a class action or a case brought for a violation of section 6-1-709,
> any person who, in a private civil action, is found to have engaged in or caused
> another to engage in any deceptive trade practice listed in this article shall be
> liable in an amount equal to the sum of:
>     (a) The greater of:
>             (I) The amount of actual damages sustained; or
>             (II) Five hundred dollars; or
>             (III) Three times the amount of actual damages sustained, if it is
>             established by clear and convincing evidence that such person
>             engaged in bad faith conduct; plus
>     (b) In the case of any successful action to enforce said liability, the costs of
>     the action together with reasonable attorney fees as determined by the
>     court.

C.R.S. § 6-1-113(2).

VW asserts that Plaintiff Schatz cannot assert his Count II damage claim under the

Colorado CPA on behalf of a class.  VW relies on the language of the statute to support its

argument and "generally" cites *Jahn v. ORCR, Inc.*, 92 P.3d 984 (Colo. 2004).  *Jahn*, however,

did not address this narrow issue.

In response to VW's argument, Plaintiffs assert that the above statute does not preclude

class actions for damages based on actual losses.  They contend the statute merely limits the

recovery of minimum statutory damages, and exemplary damages, to non-class actions.

Plaintiffs rely on the language of the statute, and also cite two cases that also do not expressly

discuss this issue.

The Court concludes that the Colorado Consumer Protection Act does not preclude class

22

actions for actual damages for two reasons.

First, the Court agrees with Plaintiffs' interpretation of the plain language of the statute. Had the Colorado legislature intended to preclude class actions for monetary damages, it could have done so. It did not. Rather, by its plain terms, it simply restricted its provisions for statutory damages, treble damages, and attorney fees.

Second, in *Robinson v. Lynmar Raquet Club, Inc.*, 851 P.2d 274 (Colo. App. 1993), the Colorado Court of Appeals discussed the section in question, Section 6-1-113. It explained that the statute "expressly excludes members of a class from benefitting from damages provided in subparagraphs (2)(a) and (b)" and, therefore, "although an individual plaintiff may be awarded $250[5] under the provision without proof of actual damages, class action members may not." *Id.* at 278. The court further stated that "the statute **does not preclude class members from bringing an action for actual damages**." *Id.* (emphasis added).

Accordingly, the Court concludes that the Colorado Consumer Protection Act does not preclude class actions for actual damages.

    c.    <u>Can Busch Or Vamos Assert Their Count II Claims To Exemplary Damages Or Minimum Recovery Under The New York Statute?</u>

Next, VW asserts that VW-Plaintiffs Busch and Vamos cannot assert their Count II claims to exemplary damages, or a minimum recovery, under the applicable New York statute. Section 901(b) of the New York statute provides that "[u]nless a statute creating or imposing a penalty, or a minium measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minium measures of recovery created or imposed by

---

[5]At that time the amount of statutory damages was $250, but the amount was increased to $500 in the 1999 amendments to the statute.

statute may not be maintained as a class action." Section 901(b) of the New York Civil Practice Law & Rules.

VW contends that the above statute precludes the VW-named Plaintiffs from seeking exemplary or minimum damages in a class action. Plaintiffs rely on several decisions that have held that the New York restriction is a substantive rule, and therefore applicable under the *Erie* Doctrine.

Plaintiffs do not dispute that the provision at issue prohibits Busch and Vamos from recovering exemplary or minimum damages in a class action. They assert, however, that § 901(b) is procedural and therefore not applicable to class actions brought in federal court under diversity jurisdiction. Plaintiffs rely on *Wesley v. John Mullins & Sons, Inc.*, 444 F.Supp. 117 (E.D. N.Y. 1978); *In re Oot*, 112 B.R. 497 (Bankr. N.D. N.Y. 1989); and *In re Peters*, 90 B.R. 588 (Bankr. N.D. N.Y. 1988) to support their position.

The Court agrees with VW that the statutory restriction bars Busch and Vamos from pursuing claims for exemplary damages or a minimum recovery in a class action. "The majority of courts have concluded that § 901(b) is a substantive law which must be applied in the federal forum." *Holster v. Gatco, Inc.*, 485 F.Supp.2d 179, 185 (E.D. N.Y. 2007)(collecting cases); *see also Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 466 F.Supp.2d 467, 472-73 (E.D. N.Y. 2006)(ruling that § 901(b) is substantive and rejecting the same authorities that Plaintiffs rely on here.).

D.    Challenges To Count III ("Breach of Express Warranty"):

Count III, Plaintiff's breach of express warranty claim, is asserted against each Manufacturer Defendant. Each of them challenge that claim on the same ground – that a

24

plaintiff's express warranty claim fails where that plaintiff's vehicle/OnStar equipment fulfilled the term of the durational warranty before the cutoff of analog service.

Each of the Manufacturer Defendants offered an express warranty on the vehicles purchased or leased by Plaintiffs.  Although the terms of the express warranty's offered by each manufacturer differ, each warranty is subject to time and mileage limitations: 1) GM's warranty covers the vehicle "for three years or 36,000 miles, whichever occurs first."  (MAC at ¶ 86); 2) Honda's warranty "begins on the date the vehicle is put into use" and covers the vehicle "for 4 years or 50,000 miles, whichever comes first."  (MAC at ¶ 95); 3) Subaru's warranty is for "3 years or 36,000 miles, whichever comes first."  (MAC at ¶ 92); and 4) VW's "New Vehicle Warranty period is 4 years or 50,000 miles, whichever occurs first."  (MAC at ¶ 89).

Defendants take the position that a plaintiff's express warranty claim must fail, as a matter of law, where that plaintiff's vehicle containing OnStar equipment fulfilled the durational term of the express warranty given by the manufacturer before the cutoff date for analog service, which was February 18, 2008. (MAC at ¶¶ 5 & 75).  They contend that any "defect" that occurs outside of the time or mileage limits of the applicable written warranty may not be the basis for an express warranty claim.  Defendants cite numerous cases in support of this ground for relief, including:  *Abraham v. Volkswagen of America, Inc*., 795 F.2d 238 (2d Cir. 1986); *Duquesne Light Co. v. Westinghouse Elec. Corp*., 66 F.3d 604 (3d Cir. 1995); *Daugherty v. American Honda Motor Co., Inc*., 144 Cal.App.4th 824 (2006); *Perkins v. Daimlerchrysler Corp.*, 383 N.J.Super. 99 (2006); *In re Ford Motor Co. Speed Control Deactivation Switch Products Liability Litig.*, 2007 U.S. Dist. LEXIS 62483 at *19 (E.D. Mich. 2007); and *Clemens v. Daimlerchrysler Corp*., 534 F.3d 1017 (9th Cir. 2008).

25

This ground for relief is well supported by the authorities cited by Defendants in their respective motions.

*Abraham* was a putative class action wherein plaintiffs asserted a breach of express warranty claim against an automotive manufacturer. The plaintiffs argued that a defect discovered outside of the time or mileage requirements of the applicable written warranty, but latent before that time, may be the basis of a valid express warranty claim if the warrantor knew of the defect at the time of sale. The Second Circuit rejected that position, noting that the "general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed." *Abraham, supra*, at 250. The court further explained:

> Moreover, virtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a "latent defect" that existed at the time of sale or during the term of the warranty. All parts will wear out sooner or later and thus have a limited effective life. Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time. Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to "know" that many parts will fail after the warranty period has expired. A rule that would make failure of a part actionable based on such "knowledge" would render meaningless time/mileage limitations in warranty coverage.

*Id.*

In *Duquesne Light Co.*, the written express warranty at issue provided that it would expire after one year. The district court dismissed the plaintiffs' breach of warranty claim on several grounds, including that "the alleged defect did not appear until after the expiration of the respective warranty periods." *Duquesne Light Co., supra*, at 617. The Third Circuit affirmed that ruling.

*Daugherty* was also a putative class action wherein plaintiffs asserted a breach of express

warranty claim against an automobile manufacturer.  In that case the plaintiffs alleged that the

manufacturer breached its express warranty by failing to disclose an engine defect that did not

cause malfunctions in the automobiles until long after the warranty expired.  *Daugherty, supra*.

The trial court dismissed the breach of express warranty claim, observing:

> Opening the door to plaintiffs' new theory of liability would change the landscape
> of warranty and product liability law in California.  Failure of a product to last
> forever would become a "defect," a manufacturer would no longer be able to issue
> limited warranties, and product defect litigation would become as widespread as
> manufacturing itself.

*Id*. at 122.  The appellate court affirmed the dismissal of the express warranty claim, relying

heavily on *Abraham, supra*.

*Clemens* was another putative class action brought against an automobile manufacturer.

*Clemens, supra*.  In that case, plaintiffs alleged that the manufacturer breached its express

warranty, which was expressly limited in duration to 36 months from date of purchase or 36,000

miles, whichever occurred first, in selling vehicles containing defective head gaskets.  The

district court dismissed the express warranty claims and the Ninth Circuit affirmed, stating:

> The district court properly dismissed Clemens's claim for breach of
> express warranty because Clemens has alleged no such breach.  The head gasket
> functioned throughout the 36,000 miles or three years for which it was warranted.
> Clemens attempts to escape this conclusion by arguing that the warranty expressly
> applies to "any defective item," that the defect alleged existed before the warranty
> expired, and that [Defendant] had knowledge of the defect at the time of sale.
> Therefore, he claims, the expiration of the warranty is no obstacle.
>
> California has adopted a doctrine from the Second Circuit, that forecloses
> these arguments.  "The general rule is that an express warranty does not cover
> repairs made after the applicable time of mileage periods have elapsed."
> *Daugherty v. Am. Honda Motor Co.*, 144 Cal.App.4th 824, 830, 51 Cal.Rptr.3d
> 118 (2006)(quoting [*Abraham*]).

*Clemens, supra* at 1023.  The court further concluded that:

> Every manufactured item is defective at the time of sale in the sense that it will
> not last forever; the flip-side of this original sin is the product's useful life.  If a
> manufacturer determines that useful life and warrants the product for a lesser
> period of time, we can hardly say that the warranty is implicated when the item
> fails after the warranty period expires.  The product has performed as expressly
> warranted.

*Id*.  Because the repairs at issue were made after the warranty period expired, the Ninth Circuit

affirmed the district court's dismissal of the express warranty claims.

The Honorable Bernard Friedman also dismissed a breach of express warranty claim

under similar circumstances.  *See In re Ford Motor Co. Speed Control Deactivation Switch*

*Products Liability Litig.*, 2007 U.S. Dist. LEXIS 62483 at *19 (E.D. Mich. 2007).  In that action,

the district court dismissed the express warranty claims, stating:

> None of the named Plaintiffs allege that they sought service for their SCD
> Switch, or had problems with their SCD Switch, within the three-year warranty
> period.  In fact, some Plaintiffs only now assert warranty claims on vehicles as old
> as 1995-1999 model years.  As one appellate court has explained,
>
> > To allow a customer to seek damages for breach of an express
> > warranty beyond the limits specified in that warranty would in
> > effect compel the manufacturer to insure all latent defects for the
> > entire life of the product and would place a burden on the
> > manufacturer for which it did not contract.
>
> *Evitts v. DaimlerChrysler Motors Corp*., 359 Ill.Appp.3d 504, 834 N.E.2d 942,
> 950, 296 Ill.Dec. 137 (Ill. App. Ct. 2005).
>
> The Court finds that the Limited Warranty expired before any Plaintiff
> first asserted any warranty claim.  Accordingly, the Florida, Texas and Illinois
> Plaintiffs, whose claims are governed by the UCC, have failed to state a claim for
> breach of express or implied warranty, and their breach of warranty claims are
> dismissed.

*Id*. at *19-20.

Here, it is undisputed that several of the named Plaintiffs fail to allege that they sought

28

service for the OnStar equipment in their vehicle, or actually incurred any problems with same, within the durational limits specified in their respective express warranties.

Plaintiffs makes two principal arguments in response to this ground for relief: 1) Plaintiffs claim that "other" express warranties exist, other than the express written warranties, and therefore their breach of express warranty claim should not be dismissed; and 2) that the durational and mileage limits in the express warranties are unconscionable.  For the reasons set forth below, however, the Court concludes that the MAC, as it currently exists, does not allege an express warranty claim based on any express warranties other than the express written warranties, nor does it allege an express warranty claim under the theory that the mileage and durational limits are unconscionable.

In responding to this ground for relief, Plaintiffs assert that "[i]n this case, there are two express warranties that the Court must consider."  (Pls.' Resp. to Subaru's Motion at 4).  In addition to the written warranties, Plaintiffs assert that "Defendants created a second express warranty through their affirmations regarding OnStar and its performance at the time of sale."  (*Id*. at 5).  Plaintiffs assert that Defendants' motions do not address "this second express warranty."  (*Id*.)

Plaintiffs' breach of warranty claim (MAC at 52-53), however, makes no reference to a "second express warranty" (i.e., an express warranty created by representations other than the express written warranties).  To the contrary, the breach of warranty claim alleges that "[e]ach Manufacturer Defendant expressly warranted to Plaintiffs and all other Class members who purchased or leased their vehicles that the OnStar equipment in their vehicle **would be free of defects in workmanship and materials during the warranty period**, and that the

Manufacturer Defendant would repair or replace such defective equipment at no cost to Plaintiffs and all other Class members."  (MAC at ¶ 187)(emphasis added).  Thus, the Court believes that a fair reading of the breach of warranty claim, as it currently exists, is that it only alleges a breach of warranty claim based on the express written warranties.

Next, in opposing this ground for dismissal of the breach of express warranty claim, Plaintiffs assert that enforcing the written warranties' durational limits in this case would be unconscionable.  Plaintiffs rely on two cases to support this position: *Bussain v. DaimlerChrysler*, 411 F.Supp.2d 624 (M.D. N.C. 2006); and *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 294095 (4th Cir. 1989).

*Carlson* was a putative class action wherein automobile buyers brought suit against GM for breach of implied warranty of merchantability.  The complaint contained allegations that the warranties provided were, as a matter of law, unconscionable and unreasonable.  *Carlson, supra*, at 290.  The district court dismissed the implied warranty claim stating, "[t]urning to the specific limitations periods in this case, the court has no problem concluding that the time and mileage limits are reasonable and not unconscionable."  The Fourth Circuit reversed that ruling.  In doing so, the Fourth Circuit noted that the question of whether the limitation of a warranty to a designated period is unreasonable or unconscionable may be decided as a matter of law. *Carlson,* at 292.  It nevertheless concluded that it was error for the district court to dismiss the unconscionability claim at the pleading stage, stating:

> This does not suggest, however, that a trial court can always determine 'on the pleadings' whether given contractual language is unconscionable.  To the contrary, unconscionability claims should but rarely be determined on the bare-bones pleadings – that is, with no opportunity for the parties to present relevant evidence of the circumstances surrounding the original consummation of their

contractual relationship.

> . . . .
> We therefore hold that the district court erred by ruling, solely on the basis of the pleadings, that GM's durational limitations on any and all implied warranties were both "reasonable" and "conscionable" as a matter of law. The court will be equipped to address that question only after plaintiffs have had an opportunity - whether in connection with a motion for summary judgment or at trial– to present evidence that, for example, they had "no meaningful choice" but to accept the limited warranties, or that the durational limitations "unreasonably" favored the defendant.

*Carlson, supra*, at 292-94.

*Bussain* was also a putative class action brought by automobile owners against the manufacturer. Plaintiffs alleged breach of express and implied warranties. Although the mileage and durational limits of the express warranty given to the named plaintiff had already expired when he encountered the problem at issue with his vehicle, the complaint specifically alleged that the durational limits of the express warranty were unconscionable. *Bussain, supra* at 622. The defendant manufacturer sought to dismiss the breach of warranty claim on what the district court acknowledged was the "nearly universally accepted proposition that a latent vehicle defect known to the manufacturer at the time of sale that does not manifest itself until after expiration of the express warranty does not, in and of itself, give rise to a breach of warranty claim." The district court declined to dismiss the claim because it concluded that the complaint "sufficiently pled unconsionability to state a claim for breach of express warranties." *Id*. at 622. Citing *Carlson*, the district court concluded that the unconscionability issue should not be decided before allowing plaintiff any opportunity to develop evidence of time, place and commercial setting.

As Defendants note, however, in both *Carlson* and *Bussain*, the plaintiffs' complaints

31

specifically alleged that the express warranties failed as matter of law because they are unconscionable and unreasonable.  Here, the MAC contains no allegations whatsoever that the express written warranties given by the Manufacturer Defendants, or the mileage or durational limits contained within same, are unconscionable or unreasonable.  Thus, the express warranty claim in the MAC can easily be distinguished from such claims alleged in *Carlson* and *Bussain*. The Court concludes that the MAC, as it presently exists, does not sufficiently plead unconsionability to state a claim for breach of express warranties.

Accordingly, the Court finds that the express warranty claim in the MAC, as it currently exists, fails to state a claim for relief as to those named-Plaintiffs whose express written warranties had expired prior to the cut-off of analog service.

E.    Challenges To Count IV ("Breach of Implied Warranties"):

Each of the Defendants challenge Count IV, the breach of implied warranty claim, on several grounds.  All of those challenges, however, require a conflicts of laws determination before they can be addressed by the Court.  Thus, the Court declines to rule on these challenges at this time.

F.    Challenges To Count V ("Violation of The Magnuson-Moss Warranty Act"):

Defendants assert that Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") claim is derivative of, and dependent on, Plaintiffs' state law warranty claims.  They assert that to the extent that a Plaintiff's state law warranty claim fails, his or her MMWA claim also fails.

In response, Plaintiffs contend that they have sufficiently alleged violations of the Magnuson-Moss Warranty Act in Count V.  Plaintiffs state that the "Magnuson-Moss claims are rooted in the implied warranty claims.  As plaintiffs have pled valid breach of implied warranty

32

claims, there is no basis to dismiss the Magnuson-Moss claims." (Pls.' Resp. to Honda's Motion at 23).

Thus, it appears undisputed that Plaintiffs' MMWA claims are based solely on Plaintiffs' implied warranty claims. The parties also appear to agree that if the implied warranty claims against any of the Defendants fail, the derivative MMWA claims against that Defendant also fail. As set forth above, however, the Court declines to rule on the challenges to the implied warranty claims at this time because those claims require a conflicts of law determination. That ruling precludes a ruling on these derivative challenges to Count V.

## CONCLUSION & ORDER

For the reasons above, IT IS ORDERED that Defendants' Motions to Dismiss are GRANTED IN PART AND DENIED IN PART. The motions are GRANTED to the extent that the Court rules that:

1)   With respect to Count I: The named Plaintiffs in the MAC cannot pursue class action claims for alleged violations of the MCPA;

2)   With respect to Count II: Plaintiffs Busch and Vamos cannot pursue an award of exemplary or minimum damages on their consumer protection act claims asserted under the New York statute;

3)   With respect to Count III: the MAC, as it currently exists, fails to state a breach of express warranty claim as to those plaintiffs whose written warranties expired before the cut-off of analog service.

The motions are DENIED in all other respects.

IT IS FURTHER ORDERED that the parties may obtain discovery on the conflicts of law

issue during the pre-certification discovery period.  Each party shall then file a brief stating its position with respect to the conflicts of law issue within 21 days after pre-certification discovery ends.  Each party should file a "stand-alone" brief (i.e., a brief that does not incorporate or adopt other parties' arguments.)  The opening briefs shall be no more than 20 pages in length.

Response briefs of no more than 20 pages may be filed within 21 days of service of opening briefs, and reply briefs of no more than 5 pages may be filed within seven days after service of response briefs.

   IT IS SO ORDERED.


        <u>S/Sean F. Cox       </u>
        Sean F. Cox
        United States District Judge

Dated:  February 19, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 19, 2009, by electronic and/or ordinary mail.

        <u>S/Jennifer Hernandez     </u>
        Case Manager