UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOWARD S. MORRIS, et al.,

                      Plaintiffs,

v.

GENERAL MOTORS CORPORATION,
ONSTAR CORPORATION,
VOLKSWAGEN OF AMERICA, INC.,
AMERICAN HONDA MOTOR COMPANY, INC.
& SUBARU OF AMERICA, INC.,

                      Defendants,

_____/

CASE NO. 2:07-md-01867
JUDGE SEAN F. COX
MAGISTRATE JUDGE PAUL J. KOMIVES

**OPINION AND ORDER DENYING**
**ONSTAR LLC'S MOTION FOR RECONSIDERATION (Doc. Ent. 198)**
**OF OCTOBER 20, 2009 OPINION & ORDER (Doc. Ent. 147)**

**A.**    **The Second Master Amended Class Action Complaint**

The second master amended class action complaint in this case was filed on April 30, 2009. Doc. Ent. 113. There are more than thirty named plaintiffs. Doc. Ent. 113 ¶¶ 9-36. Defendants are General Motors, Volkswagen, Honda, Subaru and Onstar. Doc. Ent. 113 ¶¶ 37-41. Plaintiffs allege (I) violations of the Michigan Consumer Protection Act (¶¶ 201-210); (II) unfair and deceptive trade practices in violation of all states' Consumer Protection Acts (¶¶ 211-213); (III) breach of express warranty (¶¶ 214-224); (IV) breach of implied warranties (¶¶ 225-234); (V) violation of the Magnuson-Moss Warranty Act (¶¶ 235-239); (VI) breach of contract (¶¶ 240-244); and (VII) unjust enrichment (¶¶ 245-250).

Defendants Volkswagen, General Motors and OnStar filed answers on May 27, 2009. Doc. Entries 115 & 117. On May 29, 2009, defendants Honda and Subaru filed answers. Doc. Entries 120 & 122.

**B.    Plaintiffs' September 1, 2009 Sealed Motion to Compel Production of Documents from Defendant OnStar**

On September 1, 2009, plaintiffs filed a sealed motion to compel production of documents from defendant OnStar. Doc. Ent. 147. Plaintiffs sought responses to their March 2, 2009 requests for production of documents Nos. 11, 12, 13, 14, 28 and 31. Doc. Ent. 147 at 3-5 ¶ 8. Plaintiffs "request[ed] entry of an Order Compelling OnStar to forthwith Produce Documents responsive to the Requests for Production, along with a properly-completed privilege log, without objection." Doc. Ent. 147 at 5. In their brief, plaintiffs argued that "OnStar [should] produce documents which are responsive to Plaintiffs' discovery requests[;]" "OnStar [should not] be allowed to redact portions of otherwise relevant and producible documents, without asserting any privilege as to the redacted portions[;]" and "OnStar [should not] be allowed to refuse to certify that its document production is complete[.]" Doc. Ent. 147 at 9.

Defendant OnStar filed a response on September 28, 2009, in which it claimed that "the only remaining issue relates to Request for Production No. 11[.]" Doc. Ent. 153 at 1. OnStar contended that "because the Court specifically bifurcated merits from class discovery, OnStar ha[d] not produced documents that refer or relate to disclosures or notices it 'considered sending.'" Doc. Ent. 153 at 1-2.

On October 15, 2009, plaintiffs filed a reply, wherein they represented that "OnStar ha[d] still failed to certify that its document production [wa]s complete or to produce documents

involving OnStar's internal discussions about what to tell customers concerning the potential loss of analog service and the failure of their OnStar units." Doc. Ent. 159 at 5.

Judge Cox referred this motion to me for hearing and determination. Doc. Ent. 148. On October 19, 2009, attorneys David H. Fink and Michael P. Cooney appeared before me. During oral argument, plaintiffs' counsel relied upon Fed. R. Civ. P. 26(g)(1)(A). Defense counsel cited *Borba v. Thomas*, 70 Cal.App.3d 144 (1977)[1] and *Holder v. Home Sav. & Loan Ass'n of Los Angeles*, 267 Cal.App.2d 91 (Oct. 31, 1968).[2]

**C.     My October 20, 2009 Order**

On October 20, 2009, I entered an opinion and order deeming resolved in part and granting in part plaintiff's sealed September 1, 2009 motion to compel production of documents from defendant OnStar. Doc. Ent. 162. First, I granted plaintiff's motion to the extent it sought certification that defendant OnStar's production was complete. Doc. Ent. 162 at 3-4.

Second, I granted plaintiffs' motion to the extent it sought a further response to Request for Production No. 11. Defendant OnStar was to, within forty-five (45) days, permit plaintiffs to inspect and copy documents responsive to Request for Production No. 11. I noted that plaintiffs' counsel had established the relevance of the information sought by this request, and defendant

---

[1]In *Borba*, appellants argued that "even if respondent's alleged statement regarding price approval was not an actionable misrepresentation, Thomas is still liable for nondisclosure to Borba of material facts: the mechanics of price approval by the Bureau." *Borba*, 70 Cal.App.3d at 154. The court concluded that "paragraph 9 by its terms effectively suggested to Borba the mechanics of Bureau approval. Additionally, the details of price approval were within easy reach of Borba; he had only to make inquiry with the Bureau. Thus, Thomas was under no duty to disclose any information to Borba." *Id*.

[2]"[I]t cannot be said that Home failed to use due diligence in making use of available information at the time it made it estimates in 1959." *Holder*, 267 Cal.App.2d at 106.

3

OnStar had failed to persuade the Court that responding to this request would be overly burdensome. Doc. Ent. 162 at 4-5.

**D.      Defendant OnStar's Motion for Reconsideration[3]**

On December 11, 2009, Defendant OnStar filed a motion for reconsideration of my October 20, 2009 opinion and order. Doc. Ent. 198. Defendant OnStar contends that "contrary to the Court's finding, the requested discovery is not relevant to any disputed issue in the class discovery stage of this matter and, further, responding to the discovery request would be overly burdensome to OnStar." Doc. Ent. 198 at 2 ¶ 4. Furthermore, defendant OnStar requests that the Court "reconsider that portion of its October 20, 2009 Order granting Plaintiffs' motion to compel as to Request for Product[ion] No. 11, and deny Plaintiffs' request that OnStar further respond to the discovery request." Doc. Ent. 198 at 2 ¶ 5. In the end, defendant OnStar requests "entry of an order denying Plaintiffs' Sealed September 1, 2009 Motion to Compel Production of Documents From Defendant OnStar." Doc. Ent. 198 at 2.[4]

---

[3]On October 30, 2009, defendant OnStar filed an objection to my October 20, 2009 order. Doc. Ent. 172. Specifically, defendant OnStar argued that my order "regarding Request No. 11 should be overruled." Doc. Ent. 172 at 4-9. Plaintiffs filed a response on November 19, 2009 (Doc. Ent. 177) and OnStar filed a reply on November 30, 2009 (Doc. Ent. 181).

On December 2, 2009, Judge Cox entered an order regarding objections to my discovery orders in this case. Doc. Ent. 182. Specifically, Judge Cox stated that "before the Court substantively reviews any party's objections to a discovery order issued by the Magistrate Judge assigned to this matter, the objections should first be presented to the Magistrate Judge in the form of a motion for reconsideration."

[4]Attached to the motion are excerpts from the July 14, 2009 deposition of Anthony DiSalle (Doc. Ent. 198-3 at 2-3) and the September 10, 2009 deposition of William Ball (Doc. Ent. 198-3 at 4-7).

4

On February 8, 2010, Judge Cox referred the motion for reconsideration to me for hearing and determination. Doc. Ent. 220.[5]

**E.     Applicable Law**

Motions for rehearing or reconsideration are governed by E.D. Mich. LR 7.1(g), which provides:

> (1) Time. A motion for rehearing or reconsideration must be filed within 10 days after entry of the judgment or order.
>
> (2) No Response and No Hearing Allowed. No response to the motion and no oral argument are permitted unless the court orders otherwise.
>
> (3) Grounds. Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case.

E.D. Mich. LR 7.1(g).

**F.     Analysis**

Defendant OnStar argues that the Court should "reconsider its October 20, 2009 Opinion and Order and deny plaintiffs' Motion to Compel further response to Request for Production No. 11 on the grounds that it[] seeks irrelevant materials and/or is unduly burdensome to OnStar[.]" Doc. Ent. 198 at 6.

Plaintiffs' March 2, 2009 Request for Production No. 11 requested production of "all documents that refer or relate to any disclosure or notice, or the type or nature of any disclosure or notice, You or any other Defendant sent or considered sending to OnStar subscribers, owners

---

[5]A hearing on this motion was noticed for March 10, 2010 (Doc. Entries 221 and 222); however, the hearing was cancelled (Doc. Ent. 223).

and/or lessees of Your vehicles in which OnStar was installed that refer or relate to the cessation of analog OnStar Service and/or the Rule Change." Doc. Ent. 147 at 1 ¶ 1; Doc. Ent. 147-3 (sealed) at 10.

Defendant OnStar's April 6, 2009 response stated: "Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, vague, and ambiguous, particularly with respect to the terms 'refer or relate to' and 'nature of any disclosure or notice.' Defendants further object that the Request seeks documents which are neither relevant nor calculated to lead to the discovery of relevant or admissible evidence, since items Defendants 'considered sending' have no relevance to any certification issue in the lawsuit. Subject to the foregoing objections, and without waiving same, Defendants agree to produce examples of disclosures or notices provided to or made available to vehicle owners regarding the analog to digital transition, the FCC decision, or the analog sunset date." Doc. Ent. 147-3 (sealed) at 10-11.

**1.** There are some initial matters to address before considering the substantive arguments posed by OnStar's motion for reconsideration. To begin, it is helpful to have an understanding of the FCC rule change, the August 24, 2002 announcement of which is discussed in the second master amended class action complaint (¶¶ 77-83). Plaintiffs allege that "by August 24, 2002, each Manufacturer Defendant and OnStar knew of the FCC ruling, and thus knew or should have known that its analog OnStar equipment was certain to become useless and would stop working on February 18, 2008, was not fit for its ordinary and intended use, and would not perform in accordance with the advertisements, marketing materials and warranties they disseminated, nor with the reasonable expectations of ordinary consumers." Doc. Ent. 113 at 14 ¶ 81. Plaintiffs further allege that "[o]n its website OnStar admits that it was aware of the FCC rule change and

6

the pending loss of analog service. In the FAQ (Frequently Asked Questions) section, OnStar lists the question 'Why Didn't OnStar Begin to Utilize Digital Technology Sooner.' OnStar's answer is not that it did not realize that analog technology would not be available; rather, OnStar's answer is that at the time of the FCC ruling there were competing digital technologies, and that OnStar could not determine which one would prevail:" Doc. Ent. 113 at 15 ¶ 83.

At the outset of its motion for reconsideration, defendant OnStar claims that "[w]ith regard to OnStar, plaintiffs assert only a consumer fraud claim based on alleged misrepresentations and omissions [regarding the FCC's rule change] at the time putative class members purchased [or leased] vehicles [equipped with OnStar]." Doc. Ent. 198 at 7, 10. To be sure, Count I-A (Violation of the Michigan Consumer Protection Act Lost Prepaid Minutes [¶¶ 207-210]) is specifically brought against defendant OnStar (Doc. Ent. 113 at 53), while Counts I (Violations of the MCPA [¶¶ 201-206]) and II ("Unfair and Deceptive Trade Practices In Violation Of All States' Consumer Protection Acts" [¶¶ 211-213]) are brought against all defendants (Doc. Ent. 113 at 51, 54).

Additionally, defendant OnStar claims that plaintiffs' relevancy arguments were first made in their October 15, 2009 reply (Doc. Ent. 159) to defendant OnStar's September 28, 2009 response (Doc. Ent. 153), and it alleges that the September 1, 2009 motion (Doc. Ent. 147) "offered no details regarding the basis for the requested relief." Therefore, defendant OnStar contends, "[t]his is [its] first opportunity to respond in writing to Plaintiffs' purported basis for seeking the requested discovery." Doc. Ent. 198 at 7 n.1.

Although the section of plaintiffs' September 1, 2009 motion which concerns "specific categories of documents not produced" does not use the word "relevant" or "relevance" with

7

regard to Request for Production of Documents No. 11 (Doc. Ent. 147 at 3-4 ¶ 8), the motion states, "Plaintiffs believe that the entire documents contain discoverable and relevant information." Doc. Ent. 147 at 3 ¶ 6. Furthermore, one of the issue presented by the motion is whether "OnStar [should] be allowed to redact portions of otherwise relevant and producible documents, without asserting any privilege as to the redacted portions?" Doc. Ent. 147 at 9.

Also, defendant OnStar's own September 28, 2009 response states that "[t]his discovery request is, by definition, not relevant to class certification[,]" "[p]laintiffs make no argument in the Motion why the requested information is relevant to class certification[,]" and "the information has no relevance to class certification." Furthermore, the response mentions the "the lack of relevance to certification[,]" and "the lack of relevance to class certification[.]" Doc. Ent. 153 at 3-4.

Plaintiffs replied that "it is OnStar's burden to explain why discovery of its internal communications is not relevant." Doc. Ent. 159 at 5 (citing *Medtronic Sofamor Danek, Inc. v. Michelson*, No. 01-2373, 2002 WL 33003691, 4 (W.D. Tenn. Jan. 30, 2002)).[6] Nevertheless, plaintiffs stated, they would "identify several important reasons why discovery of OnStar's internal communications about the FCC's rule change are relevant, even in the context of class certification." Doc. Ent. 159 at 4-5. Among other things, plaintiffs stated that "[b]ecause OnStar's internal discussions about whether to issue any disclosures to its customers will demonstrate both OnStar's beliefs as to the common impact of the rule change, and will establish

---

[6]*Medtronic Sofamor Danek, Inc. v. Michelson*, No. 01-2373, 2002 WL 33003691, 4 (W.D. Tenn. Jan. 30, 2002) ("Another district court has held that 'once a party has requested discovery, the burden is on the party objecting to show that the discovery is not relevant.'") (citing *Smith v. MCI Telecommunications Corp.*, 137 F.R.D. 25, 27 (D.Kan.1991) (citing *Pickett v. Bridgestone USA, Inc.*, No. 86-4281 (D. Kan. 1988)).

when OnStar first believed any type of disclosure was necessary, such documents are relevant and OnStar should be compelled to produce them." Doc. Ent. 159 at 7.

**2.** Defendant OnStar describes the material it produced in response to Request for Production No. 11 and notes that it responded to the discovery request at issue in April 2009, yet the underlying motion was not filed until September 2009 (Doc. Ent. 198 at 8-9). Defendant OnStar also claims that "[p]laintiffs' [September 1, 2009] Motion made no effort to articulate why such information is relevant to class certification," and contends that plaintiff's October 15, 2009 reply brief argued for the first time that "OnStar's internal discussions about whether to issue any disclosures to its customers will demonstrate both OnStar's beliefs as to the common impact of the rule change, and will establish when OnStar first believed any type of disclosure was necessary," (Doc. Ent. 198 at 9, Doc. Ent. 159 at 7).

Defendant OnStar makes three substantive arguments in support of its motion for reconsideration. First, it argues that its "knowledge of any 'common impact' is irrelevant to class discovery because that impact is not in dispute." Doc. Ent. 198 at 10-11. According to OnStar, its "internal observations regarding the 'com mon impact of the rule change' is . . . a non-issue in the context of this case." Defendant OnStar also argues that "internal documents cannot be relevant to showing a 'common issue of fact' for purposes of class certification were the fundamental impact of the rule change - that subscribers either had to upgrade their vehicles or lose service - is undisputed."

According to OnStar, "[w]hat is at issue with respect to certification is what putative class members actually knew, and when they knew it, regarding the FCC rule change." It contends that "[t]he only discovery from OnStar relevant to determining whether [a consumer

9

protection] claim could possibly proceed as a class action is information which shows what, and when, information regarding the FCC rule change and its potential impact on OnStar service was disseminated." Therefore, defendant OnStar argues, its "internal actions reflected in drafts of communications never seen by class members, or discussions about such communications, cannot establish or negate the requirements of Rule23 since no class member[] saw or was aware of such information." Defendant contends that "[w]hat the individual subscribers themselves knew, when they knew it, and what actions they took in response to that knowledge, are the facts at issue at this phase of a consumer fraud class action claim."

Defendant OnStar relies upon *In re Jackson Nat. Life Ins. Co. Premium Litigation*, 183 F.R.D. 217, 221 (W.D. Mich. 1998) ("determination of whether and which illustrations were given to class members, and of the nature of oral representations made to them at the point of sale, elements of obvious and undeniable importance to all of plaintiffs' claims, are matters requiring individualized fact development."); *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) ("Contrary to plaintiffs' argument, liability for fraudulent misrepresentations cannot be established simply by proof of a central, coordinated scheme.") and *Grainger v. State Sec. Life Ins. Co.*, 547 F.2d 303, 307 (5th Cir. 1977) ("the key concept in determining the propriety of class action treatment is the existence or nonexistence of material variations in the alleged misrepresentations.").

**3.** Second, defendant OnStar argues that "[t]he timing of OnStar's knowledge of a possible federal agency rule change is not relevant because OnStar did not have a legal duty to disclose that knowledge." Doc. Ent. 198 at 12-13. Noting plaintiff's October 15, 2009 statement that "[t]he Plaintiffs are entitled to discover OnStar's internal documents to determine whether

executives at OnStar believed, prior to August 8, 2002, that the FCC would issue an analog sunset order[,]" Doc. Ent. 159 at 6, defendant OnStar contends that "under established law, [it] could have no duty to make a disclosure regarding what a regulatory body might decide in the future, even if OnStar had some belief as to what that decision might be."

In support of its argument that "statements predicting the future actions of public officials cannot be justifiably relied upon, and therefore are not material[,]" defendant OnStar relies upon *Patel v. Pacific Life Ins. Co.*, No. 3:08-cv-0249-B, 2009 WL 1456526 (N.D. Tex. May 22, 2009),[7] *Borba v. Thomas*, 70 Cal.App.3d 144 (1977)[8] and *Holder v. Home Sav. & Loan Ass'n of Los Angeles*, 267 Cal.App.2d 91 (Oct. 31, 1968).[9] OnStar claims that "[a]ny statement made by OnStar prior to the time the FCC issued its analog sunset rule would have amounted to no more than a guess or opinion as to what the FCC would ultimately decide."

It also relies upon Ball's deposition testimony when asked about "discussions prior to the rule change about what OnStar might tell customers or potential customers about the FCC action[,]" and whether "there was [a] discussion when you said this is likely to happen that we

---

[7]"As a matter of law, any representation or prediction by any alleged Pacific Life agent as to how the IRS would treat the 412(i) plans, and the funding thereof, in the future is either an non-actionable opinion or was unjustifiably relied upon." *Patel*, 2009 WL 1456526, 13.

[8]"Appellants cannot be said to have justifiably relied on Thomas' statement about Bureau approval. Absent some special relationship between the parties, a private person is not entitled to rely on the opinion of another private person concerning the future decisions of a public body." *Borba*, 70 Cal.App.3d at 154.

[9]Considering whether "reliance [may] be placed upon representations with regard to taxes to be levied in future[,]" *Holder*, 267 Cal.App.2d at 102, 106-107, the Court concluded that "the estimates made by Home as to the amounts necessary to be paid monthly to take care of future taxes could not reasonably be relied upon as statements of what the future taxes would be." *Holder*, 267 Cal.App.2d at 107.

need to say something to the customers, we need to change our marketing, anything like that?" Doc. Ent. 198-3 at 5-7.[10]

Ultimately, defendant OnStar concludes that "documents which might show what OnStar believed the FCC decision would be are irrelevant since it cannot form the basis of a claim by any class member since any belief would be based on mere speculation."

**4.**    Third, defendant OnStar argues that "[g]athering and producing documents regarding OnStar's internal discussions about disclosures is an undue burden." Doc. Ent. 198 at 13-14. In addition to claiming that the information sought by this request is voluminous, defendant OnStar claims it "contains privileged materials, particularly because the specific request seeks 'all documents that refer to relate to any disclosure or notice' rather than drafts of proposed disclosures."[11]

Specifically, OnStar notes, "the various disclosures and notices disseminated were reviewed and commented upon by OnStar in-house counsel." Here, it refers to the deposition of DiSalle (Doc. Ent. 198-3 at 3). OnStar claims that "[t]o allow the requested discovery at this stage of the case would open significant issues on privilege that would require OnStar to review material and remove or redact privileged information and prepare a voluminous privilege log." Defendant OnStar also offers that "[s]uch logs are inherently time consuming and

---

[10]Plaintiffs attached portions of the Ball deposition to their October 15, 2009 reply (Doc. Ent. 159-2), and their December 4, 2009 response to defendant OnStar's October 22, 2009 brief regarding choice of law (Doc. Ent. 191-3).

[11]OnStar elsewhere claims that its "counsel necessarily worked closely with its business personnel in addressing possible FCC actions and their implications for OnStar. The requested discovery directly seeks . . . attorney work product and privileged attorney-client communications." Doc. Ent. 198 at 7.

12

burdensome[,]" and "the very nature of such logs risk disclosure of confidential information regarding the timing and nature of the work of counsel."

Defendant OnStar also contends that "the request itself is vague and overbroad on its face, particularly given the alleged relevance articulated by Plaintiffs." Taking issue with the phrase, "refer or relate," defendant OnStar claims the request is "overbroad and unduly burdensome in on its face." Doc. Ent. 198 at 14 (citing *Moses v. Halstead*, 236 F.R.D. 667, 672 (D. Kan. 2006).[12] Defendant OnStar proposes that "[i]f drafts of notices and disclosures actually sent are relevant – which OnStar denies – then the request should be limited to shoe specific materials."

Ultimately, defendant OnStar contends, "given the lack of relevance to class certification, OnStar submits that the expense and burden of reviewing and producing the information responsive to Request No. 11 is unjustified."

**5.** Upon consideration defendant OnStar's motion for reconsideration of my October 20, 2009 opinion and order (Doc. Ent. 198) is denied. The motion seeks reconsideration of the order (Doc. Ent. 162) and denial of plaintiff's September 1, 2009 motion (Doc. Ent. 147) as to Request for Production No. 11 (Doc. Ent. 198 at 15), but the arguments presented in support of this request "merely present the same issues ruled upon by the court, either expressly or by reasonable implication." E.D. Mich. LR 7.1(g)(3).

---

[12]*Moses*, 236 F.R.D. at 672 ("On numerous occasions this Court has held that a request or interrogatory is overly broad or unduly burdensome on its face if it (1) uses an omnibus term such as 'relating to' or 'concerning,' and (2) applies to a general category or group of documents or a broad range of information.").

13

In its motion for reconsideration, defendant OnStar takes the positions that my October 20, 2009 order "is premised on the erroneous conclusion that OnStar's internal considerations regarding the effect of the FCC rule change are relevant to class certification issues[,]" "OnStar's internal actions reflected in drafts of communications never seen by class members, or discussions about such communications, cannot establish or negate the requirements of Rule 23 because no class member saw or was aware of such information[,]" "any claimed relevance of the request[ed] discovery is outweighed by the burden of production[,]" and plaintiffs' September 1, 2009 motion "does not seek relevant information and that the requested discovery is unduly burdensome to OnStar[,]" Doc. Ent. 198 at 7, 9. It claims that the documents required to be produced by my October 20, 2009 order "simply do not have any probative value with respect to either the 'key concept' of what and when information was available to each putative class member or whether such information was uniform." Doc. Ent. 198 at 11.

Specifically, defendant OnStar argues that (1) its "knowledge of any 'common impact' is irrelevant to class discovery because that impact is not in dispute[,]" Doc. Ent. 198 at 10-11, (2) "[t]he timing of OnStar's knowledge of a possible federal agency rule change is not relevant because [it] did not have a legal duty to disclose that knowledge[,]" Doc. Ent. 198 at 12-13, and (3) "[g]athering and producing documents regarding [its] internal discussions about disclosures is an undue burden[,]" Doc. Ent. 198 at 13-14.

However, relevance and burdensomeness have already been considered and ruled upon by the Court. This conclusion is supported by defendant OnStar's September 28, 2009 response, wherein it stated that "[t]his discovery request is, by definition, not relevant to class certification[,]" "gathering and producing such information at this stage of the case is an undue

burden, particularly given the lack of relevance to certification[,]" "[i]t would also potentially involve the Court in disputes as to the privilege when the information has no relevance to class certification[,]" and "[g]iven the lack of relevance to class certification, OnStar submits that the expense and burden of producing the requested information at this stage of the case is unjustified." Doc. Ent. 153 at 3-4. Furthermore, my October 20, 2009 order specifically concluded that "Plaintiffs' counsel has established the relevance of the information sought by this request, and defendant OnStar has failed to persuade the Court that responding to this request would be overly burdensome." Doc. Ent. 162 at 5.

Likewise, defendant OnStar has not demonstrated "a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(g)(3).

**G.     Order**

Accordingly, OnStar's motion for reconsideration of October 20, 2009 opinion and order (Doc. Ent. 198) is DENIED.

IT IS SO ORDERED.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

|  |  |
|---|---|
| | s/Paul J. Komives |
| | PAUL J. KOMIVES |
| Dated: 3/12/10 | UNITED STATES MAGISTRATE JUDGE |

15

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on March 12, 2010.
>
>                               s/Eddrey Butts
>                               Case Manager