UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re: OnStar Contract Litigation       Case No. 2:07-MDL-01867

Honorable Sean F. Cox

_____/

**OPINION
ON CHOICE-OF-LAW DETERMINATIONS**

Buyers and lessees of automobiles equipped with OnStar telematics equipment filed

prospective class action complaints against four automobile manufacturers and OnStar

Corporation ("OnStar"), asserting consumer protection act and warranty claims.  Those actions

were consolidated for pretrial proceedings by the Judicial Panel on Multidistrict Litigation.  The

complaints have since been combined in a Second Master Amended Complaint that seeks

certification of nationwide classes.

The matter is currently before the Court for choice-of-law determinations. The parties

have asked this Court to determine, prior to briefing of Plaintiffs' motion seeking class

certification, the law that will be applied to Plaintiffs' claims.

Plaintiffs' opening brief raises three threshold issues: 1) whether non-residents who did

not purchase/lease their vehicles in Michigan can maintain a class action under the Michigan

Consumer Protection Act ("MCPA"); 2) whether a written choice-of-law provision in the Terms

and Conditions of OnStar's Subscription Agreements govern the consumer protection act claims

asserted against OnStar; and 3) whether a written choice-of-law provision in the OnStar

Subscription Agreement's Terms and Conditions governs claims against the Manufacturer

1

Defendants, who are not parties to those contracts.

As set forth below, the Court concludes that: 1) the MCPA's limitation on class actions conflicts with Rule 23 of the Federal Rules of Civil Procedure and therefore does not prevent non-residents from pursuing class-action claims under the MCPA; 2) the choice-of-law provision in the OnStar Subscription Agreement's Terms and Conditions ("OnStar T&C's") governs the claims against OnStar, and therefore Michigan law applies to Plaintiffs' consumer protection act claims against OnStar; 3) the choice-of-law provision in the OnStar T&C's does not govern claims against the Manufacturer Defendants, who are not parties to those contracts, and therefore the Court must conduct a choice-of-law analysis to determine the law to be applied to the claims against the Manufacturer Defendants; and 4) after conducting a choice-of-law analysis as to the consumer protection act and warranty claims asserted against Honda, Subaru and VW, the Court concludes that the law of each Plaintiff's home state should govern his or her claims.

## BACKGROUND

Plaintiffs filed their "Master Amended Class Action Complaint" ("MAC") on February 25, 2008, asserting claims against the following Defendants: 1) General Motors Corporation ("GM"); 2) Volkswagen of America ("VW"); 3) American Honda Motor Company ("Honda"); 4) Subaru of America ("Subaru"); and 5) OnStar.

In response to the MAC, Defendants filed motions to dismiss. On February 19, 2009, this Court issued an "Opinion & Order Granting In Part And Denying In Part Defendants' Motions To Dismiss." (D.E. No. 100). In that Opinion & Order, this Court ruled that any named plaintiffs "who reside outside of Michigan and purchased or leased their vehicles outside of Michigan, cannot pursue a class action MCPA claim because the statute, by its express terms,

2

limits such a class to persons residing or injured in Michigan."  (D.E. No. 100 at 7).

Following that Opinion & Order, Plaintiffs obtained leave to file a Second Master Amended Class Action Complaint ("SMAC"), which was filed on April 30, 2009.

After the SMAC was filed, OnStar filed a Motion to Compel Arbitration, asking the Court to compel Plaintiffs to arbitrate Counts I-A, VI and VII of the SMAC.  Those counts involve "pre-paid minutes" purchased by Plaintiffs.  OnStar asserted, and this Court agreed, that the OnStar T&C's arbitration provision requires arbitration of the pre-paid minutes claims.  (*See* D.E. No. 156).  Accordingly, Counts I-A, VI, and VII are no longer in this action.

Thus, the following counts remain in this action: "Plaintiffs and The Classes v. All Defendants Violations of the Michigan Consumer Protection Act" (Count I); "Plaintiffs and the Classes v. All Defendants Unfair and Deceptive Trade Practices In Violation of All States' Consumer Protection Acts" (Count II); "Plaintiffs and the Classes v. All Manufacturer Defendants Breach of Express Warranty" (Count III); "Plaintiffs and the Classes v. All Manufacturer Defendants Breach of Implied Warranties" (Count IV); and "Plaintiffs and the Classes v. All Manufacturer Defendants Violation of the Magnuson-Moss Warranty Act" (Count V).

In Counts I[1] and II, Plaintiffs assert consumer protection act claims against OnStar and the Manufacturer Defendants, based upon a fraudulent inducement/concealment theory.

_____

[1]In Count I of the SMAC, Plaintiffs allege that the "Manufacturer Defendants' and OnStar's statements, representations, omissions, and practices made in connection with their sale or lease of OnStar equipment and service" were in violation of various sections of the MCPA and that Plaintiffs' alleged damages include "their inability to obtain OnStar service after December 31, 2007."  (SMAC at ¶¶ 204 & 206).

3

Plaintiffs allege that although the "Defendants knew by August 2002 that their analog-based OnStar equipment would stop working on February 18, 2008," they "continued to sell analog equipment to customers without notifying those customers that the equipment would cease to function.  Defendants intentionally concealed from customers the material fact that their equipment would stop working on February 18, 2008."  (SMAC at ¶ 5).

Counts III, IV and V of the SMAC assert warranty claims against Defendants Honda, Subaru and VW.[2]  There are no warranty claims asserted against OnStar.

In Count III, Plaintiffs assert express warranty claims against Honda, Subaru and VW. Plaintiffs allege that "[a]t the time of purchase or lease, Manufacturer Defendants" expressly represented to Plaintiffs that their "OnStar equipment would provide safety and security and would function and be available for the life of their vehicles."  (SMAC at ¶ 84).  Plaintiffs further allege that "[a]t the time of sale or lease," Honda, Subaru and VW provided each plaintiff "with a new car warranty."  (SMAC at ¶¶ 91, 94, & 97).  Plaintiffs contend that "[c]ontrary to their warranties, each Manufacturer Defendant has expressly or implicitly given notice to Plaintiffs and all other OnStar subscribers who purchased or leased their vehicles that it will not repair or replace their defective OnStar equipment so that it will operate on digital cellular networks, at no cost to Plaintiffs and the Class."  (SMAC at ¶ 222).  Plaintiffs allege that "[e]ach Manufacturer Defendant breached its express warranties to Plaintiffs and all other Class members to repair and/or replace OnStar equipment so that it is in good operational condition and repair and suitable for use in the OnStar system."  (SMAC at ¶ 223).

---

[2]These claims were also asserted against GM.  All claims against GM, however, are subject to an automatic bankruptcy stay.

In Count IV, Plaintiffs assert implied warranty claims against Honda, Subaru and VW. Plaintiffs allege that "[a]t the time of purchase or lease," each Manufacturer Defendant "impliedly represented to Plaintiffs and the Class that their OnStar equipment would provide safety and security and would function and be available for the life of their vehicles."  (SMAC at ¶ 84).  Plaintiffs allege that "[a]t the time of contracting, each Manufacturer Defendant impliedly warranted to Plaintiffs and to all other Class members who purchased or leased their vehicles that their OnStar equipment was of merchantable quality and suitable for ordinary use."  (SMAC at ¶ 226).  Plaintiffs allege that the Manufacturer Defendants breached their implied warranties in that the OnStar equipment does "not function during the reasonable life expectancy of Plaintiffs' vehicles."  (SMAC at ¶ 228).

In Count V, Plaintiffs assert claims against the Manufacturer Defendants under the Magnuson-Moss Warranty Act.  The parties agree that the federal Magnuson-Moss Act claims are derivative of Plaintiffs' breach of express and implied warranty claims, and therefore do not require a separate choice-of-law determination.

The parties initially raised choice-of-law issues in the briefs submitted on Defendants' Motions to Dismiss.  At that time, the parties made limited arguments in support of their respective positions as to the law that should be applied to Plaintiffs' claims.   Plaintiffs indicated that they believed a choice-of-law determination was premature at that time because they needed some limited discovery before they could fully brief the issue.  All parties agreed that, prior to briefing of Plaintiffs' Motion for Class Certification, this Court should make a determination as to the law that will apply to Plaintiffs' claims.   Accordingly, the Court, with the agreement of the parties, set a briefing schedule for the parties to brief their respective

positions.  The parties have concluded that extensive briefing.[3]

ANALYSIS

A district court sitting in diversity normally applies the substantive law, including the choice-of-law rules, of the forum state in which it sits.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  In this action, however, "the legal quagmire known as choice of law has once again reared its ugly head in the multidistrict context."  *In re Disaster at Detroit Metropolitan Airport on August 16, 1987,* 750 F.Supp. 793, 795 (E.D. Mich. 1989).

This Court is presiding over several diversity actions that have been transferred to this district, pursuant to 28 U.S.C. § 1407(a), for the purpose of conducting consolidated pre-trial proceedings.  Although some of the actions were originally filed in Michigan, actions from six other states (California, Illinois, Louisiana, New Jersey, New York, and West Virginia) were transferred to this district by the Judicial Panel on Multidistrict Litigation.

"Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."  *In re Air Disaster at Ramstein Air Base, Germany*, 81 F.3d 570 (5th Cir. 1996) (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)); *see also* Multidistrict Lit. Man. § 9:18 (2008) ("In diversity cases, the court will apply the law of the transferor forum, by application of its choice-of-law rules.").  Thus, "[i]n the context of an MDL action, instead of applying the choice-of-law rules of the state in which it sits to all of the cases, in each of the cases the transferee court must apply the choice-of-law rules that the transferor

_____

[3]GM did not file a brief because the automatic stay in the bankruptcy action filed by GM on June 1, 2009, is still in effect.  (D.E. No. 199; Pls.' Opening Br. at 1 n.1).

court of each case would have applied." *In re Trade Partners, Inc., Investors Litigation*, 2008 WL 2757835 (W.D. Mich. 2008).

This means that, to engage in a proper choice-of-law analysis, this Court may need to apply the choice-of-law rules of seven states (Michigan, California, Illinois, Louisiana, New Jersey, New York, and West Virginia) to the claims asserted in the cases transferred here.

The Court begins by addressing three threshold issues raised by Plaintiffs in their Opening Brief: 1) whether non-residents who did not purchase/lease their vehicles in Michigan can maintain a class action under the MCPA; 2) whether a written choice-of-law provision in the Terms and Conditions of OnStar's Subscription Agreements govern the consumer protection act claims asserted against OnStar; and 3) whether a written choice-of-law provision in the OnStar Subscription Agreement's Terms and Conditions governs claims against the Manufacturer Defendants, who are not parties to those contracts.

I.   Can Non-Residents Who Did Not Purchase/Lease Their Vehicles In Michigan Maintain A Class Action Under The MCPA?

In Plaintiffs' Opening Brief, they assert that Michigan law should be applied to all claims asserted in this action, including Plaintiffs' consumer protection act claims. Plaintiffs state that they "are mindful of the Court's prior statement that non-Michigan residents cannot bring claims under the MCPA," but characterize that ruling as "dicta."[4]

At the March 30, 2010 hearing regarding choice-of-law, this Court advised the parties that it intended to reaffirm its prior ruling that the only individuals who may assert a class action

_____

[4]At the time that Defendants challenged Count I in their motions to dismiss, there were no named Plaintiffs who resided in Michigan or purchased/leased their vehicle in Michigan. Thus, the Court's ultimate ruling was that "the named Plaintiffs in the MAC cannot pursue a class action claim for alleged violations of the MCPA." (D.E. No. 100 at 9).

claim under the MCPA in this action are those plaintiffs who either reside in Michigan or purchased/leased their vehicle in Michigan.  Shortly after that hearing, however, the United States Supreme Court issued *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 130 S.Ct. 1431 (March 31, 2010).

The Court allowed the parties to file supplemental briefs following *Shady Grove.* Having reviewed *Shady Grove,* and the parties' supplemental briefs, the Court concludes that the MCPA's limitation on class actions conflicts with Rule 23 of the Federal Rules of Civil Procedure and therefore does not prevent non-residents from pursuing class-action claims under the MCPA in this action.

II.     Does The Choice-Of-Law Provision In The OnStar T&C's Govern Claims Against The Manufacturer Defendants, Who Are Not Parties To That Contract?

Plaintiffs contend that Michigan law must be applied to all of Plaintiffs' claims. Plaintiffs assert that no choice-of-law analysis is required here because Michigan law should be applied to the claims against Honda, Subaru and VW based upon the written choice-of-law provision in the written OnStar Subscription Agreement's General Terms and Conditions ("OnStar T&Cs").  Although various versions of the OnStar T&Cs exist, they each contain a choice-of-law provision stating that Michigan law will govern.

Although they are not parties to the OnStar Subscription Agreements, Plaintiffs contend that Honda, Subaru and VW are bound by the OnStar T&Cs on two bases.  First, Plaintiffs assert that the "T&C's expressly make each manufacturer a party to the T&C's" and cite the following provision in the OnStar T&Cs as support for that position:

> 39.  WHO ELSE THIS AGREEMENT COVERS.  Any of the wireless service providers and other companies who help us provide OnStar service, including our affiliates, suppliers, *Car makers,* distributors, and our authorized dealers, or who

> provide you service through OnStar, *are intended beneficiaries of this agreement*.
> You agree that you'll make any of your passengers or guests or drivers of your
> Car aware of our rights and subject to the limitations of this agreement.

(December 2004 OnStar Terms and Conditions at ¶ 39) (emphasis added).  Second, Plaintiffs

assert that "VW, Honda and Subaru are co-venturers with OnStar and are expressly bound by the

provisions" of the OnStar Terms and Conditions.

The Court concludes that the choice-of-law provision in the OnStar T&Cs does not

govern the consumer protection act or warranty claims asserted against Subaru, Honda or VW.

The most glaring obstacle to Plaintiffs' position that the choice-of-law provision in the

OnStar T&Cs applies to their claims against the Manufacturer Defendants is the fact that Subaru,

Honda and VW are not parties to OnStar Subscription Agreements.  The general rule is that "a

contract is 'between' – hence binding on – only those who are parties to it, as evidenced by their

signatures."  *West 14th St. Comm. Corp. v. 5 West 14th Owners Corp*., 815 F.2d 188, 199 (2d Cir.

1987); *see also SCM Corp. v. Deltak Corp*., 702 F.Supp. 1428, 1431 (D. Minn. 1988) (A

contractual choice-of-law provision does not bind a litigant who is not a party to the contract.).

In their Opening Brief, Plaintiffs assert that the choice-of-law provision applies to the

Manufacturer Defendants because: 1) of the third-party beneficiary provision in the 2004 T&Cs;

and 2) OnStar and the Manufacturers Defendants are "co-venturers."  That brief does not contain

any legal authority to support either argument.

Moreover, Plaintiffs' argument that the Manufacturer Defendants are bound by the

OnStar T&C's simply by virtue of being named as third-party beneficiaries to those contracts

"rests on a misunderstanding of contract law.  A third-party beneficiary is one who is given

rights under a contract to which that person is *not* a party.  13 Williston, *Contracts* § 37:1, at 9-

10 (4th ed. 2000)." *Motorsport Engineering, Inc. v. Maserati SPA*, 316 F.3d 26, 29 (1st Cir. 2002) (emphasis in original). "Obligations under such a contract, including any obligations to third parties, are created by agreement between the *signatories* (here, [Plaintiffs and OnStar]). If the signatories so intend, a third party can enforce the contract against the signatory so obligated. Restatement (Second) of Contracts § 304 (1981). But the third-party beneficiary, who did not sign the contract, is not liable for either signatory's performance and has no contractual obligations to either. *See* Farnsworth, *Contracts* § 10.9, at 773 (1990)." *Id.* (emphasis in original). Thus, while "[a] third party beneficiary might in certain circumstances have the power to sue under a contract; it certainly cannot be *bound* to a contract it did not sign or otherwise assent to." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (emphasis in original).

In opposing Plaintiffs' position that the choice-of-law provision applies, Honda notes the general rule that a non-signatory is not bound by a contract and also notes that there are some limited exceptions.

In *Javitch*, the Sixth Circuit stated that "nonsignatories may be bound to an arbitration agreement under ordinary contract and agency principles." *Javitch v. First Union Securities, Inc.*, 315 F.3d 619 (6th Cir. 2003). It then explained that there are "[f]ive theories for binding nonsignatories to arbitration agreements [that have been] recognized: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." *Id.* (citing *Thomson-CSF v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). Here, however, Plaintiffs have not established that any of the above exceptions apply to Honda, Subaru or VW.

Accordingly, the Manufacturer Defendants are not bound by the choice-law provision in the OnStar T&C's because they are not parties to those contracts and Plaintiffs have not

established that an exception to the general rule applies here.

Because the Court concludes that the choice-of-law provision in the OnStar T&C's does not govern the claims against Honda, Subaru or VW, the Court must conduct a choice-of-law analysis to determine the law to be applied to Plaintiffs' claims against Honda, Subaru and VW.

III.   Does The Choice-Of-Law Provision In The OnStar T&C's Govern Plaintiffs' Consumer Protection Act Claims Against OnStar?

The OnStar T&C's have changed over time.  It is undisputed that different versions went into effect on: 1) June 2002; 2) July 2003; 3) July 2004; 4) December 2004; and 5) July 2007. (*See* D.E. No. 144).

All of the named Plaintiffs in the SMAC allege either: 1) that they have continuously subscribed to OnStar service since purchasing/leasing their vehicle (*see*, *e.g*., SMAC at ¶¶ 126 & 129) or 2) that they were subscribing to OnStar service in 2007, when they received a form letter regarding their equipment (*see, e.g.,* SMAC at ¶¶ 138 & 140).  Thus, either the December 2004 or the July 2007 T&C's apply to the named Plaintiffs.  Both the December 2004 version and the July 2007 version contain the same choice-of-law provision:

> THE LAW THAT GOVERNS OUR RELATIONSHIP.  To the fullest extent permitted by law, and except as explicitly provided otherwise, this agreement and any disputes arising out of or related to it will be governed by the laws of the state of Michigan without regard to its conflict of law principles, and by any applicable tariffs, wherever filed.

(December 2004 T&C's at ¶ 40; July, 2007 T&C's at ¶ 40).

Neither Plaintiffs nor OnStar dispute the validity or enforceability of the above choice-of-law provision.  Rather, they disagree as to its *scope*.  OnStar contends that the above choice-of-law provision does not govern Plaintiffs' consumer protection act claims against OnStar because

those claims are outside of the scope of the provision, while Plaintiffs claim that the scope of the provision is broad enough to encompass those claims.

In its brief, OnStar asserts that, in determining the scope of the choice-of-law provision, the Court should do so under the law of each of the various transferor forums.  OnStar notes that three of those forums (California, Louisiana, West Virginia) simply apply the law of the state selected in the choice-of-law provision at issue (i.e., Michigan) to determine its scope. Moreover, OnStar's brief demonstrates that the law as to the remaining forums is substantially the same as Michigan law, in that the scope of a contractual choice-of-law provision is a matter of contract interpretation.  Thus, the Court looks to the terms of the provision itself.

Unlike some previous versions of the T&C's,[5] the choice-of-law provision at issue here is broad.  The paragraph itself is titled, "THE LAW THAT *GOVERNS OUR RELATIONSHIP*," and the body of the provision states that Michigan law will apply to "*this agreement and any disputes arising out of or related to it."*  (December 2004 T&C's at ¶ 40; July, 2007 T&C's at ¶ 40).

OnStar claims that Plaintiffs' consumer protection act claims are outside of the scope of this provision.  OnStar claims that the T&C's only relate to OnStar *services*, and that the consumer protection act claims pertain to representations and omissions made regarding OnStar *equipment.*

Contrary to OnStar's assertion that the "T&C's do not relate to the equipment itself"

---

[5]For example, the June 2002 T&C's contained a choice-of-law provision that was more narrow, providing that "This Agreement, including all matters relating to the validity, construction, performance and enforcement hereof, shall be governed by the laws of the state of Michigan."

12

(OnStar's Response to Pls.' Br. at 14) ("Put simply, the T&C's do not relate to the equipment itself"), the OnStar T&C's contain numerous provisions that relate to OnStar equipment:

- "YOUR OnStar SERVICE AND EQUIPMENT.  Your car . . . must come with authorized OnStar Equipment – the hardware and software used to provide OnStar service – for you to receive OnStar service . . ." (July 2007 T&C's at ¶ 1; December 2004 T&C's at ¶ 1).

- "CAUTIONS ABOUT A CHANGE IN OnStar SERVICE IN 2008.  The OnStar Equipment in some 2004 or later Cars used both digital and analog wireless technology. Other OnStar Equipment uses only analog wireless technology.  The [FTC] has decided that, after 2007, wireless service providers (including the ones who work with us), don't have to provide service for the analog wireless network.  As a result, our wireless service providers won't continue to provide analog service after 2007.  This means that beginning January 1, 2008, OnStar won't provide service for analog-only OnStar Equipment. IF YOU DON'T HAVE DIGITAL OnStar Equipment, YOUR OnStar SERVICE WON'T WORK AFTER THAT DATE."  (July 2007 T&C's at ¶ 15; *see also* December 2004 T&C's at ¶ 12).

- "NO WARRANTIES ON EQUIPMENT, INFORMATION, OR SERVICES.  Warranties are special kinds of promises.  WE DON'T MAKE ANY WARRANTIES, EXPRESS OR IMPLIED, ABOUT OnStar Equipment or any other equipment used with OnStar service.  You may have a warranty on OnStar Equipment or other equipment from the maker of your Car, but not from us. . ." (July 2007 T&C's at ¶ 35; *see also* December 2004 T&C's at ¶ 32).

- ". . . WE AREN'T LIABLE TO YOU FOR (1) ANY INJURIES TO PERSON OR PROPERTY ARISING OUT OF OR RELATING TO YOUR USE OF OnStar Equipment or OnStar SERVICE, OR (2) ANY DAMAGES ARISING OUT OF OR RELATING TO THE INSTALLATION, REPAIR, OR MAINTENANCE OF OnStar Equipment."  (July 2007 T&C's at ¶ 36; *see also* December 2004 T&C's at ¶ 33).

- "Finally, you agree that the limitations of liability and indemnities in this agreement will survive even after the agreement has ended.  These limitations of liability apply not only to you, but to anyone using your Car, to anyone making a claim on your behalf, and to any claims made by your family, employees, customers, or others arising out of or relating to your OnStar service or OnStar Equipment."  (July 2007 T&C's at ¶ 36; *see also* December 2004 T&C's at ¶ 33).

Indeed, some of the provisions in the T&C's regarding changes in service in 2008 for customers with analog equipment appear central to OnStar's defenses in this action.  (*See* D.E. No. 53, at 2 & 21; D.E. No. 117 at ¶ 261) (asserting that the claims against OnStar fail because it "provided appropriate information to Plaintiffs and putative class members.").

Moreover, in Count I of the SMAC, Plaintiffs allege that the "Manufacturer Defendants' and OnStar's statements, representations, omissions, and practices made in connection with their sale or lease of OnStar equipment *and service*" were in violation of various sections of the MCPA and that Plaintiffs' alleged damages include "their inability to obtain *OnStar service* after December 31, 2007."  (SMAC at ¶¶ 204 & 206) (emphasis added).

Accordingly, the Court concludes that the consumer protection claims against OnStar are related to the T&C's and that the choice-of-law provision is sufficiently broad so as to cover those claims.  The choice-of-law provision therefore requires application of Michigan law to Plaintiffs' consumer protection act claims against OnStar.

IV.    Under A Proper Choice-Of-Law Analysis, What Law Will Apply To Plaintiffs'
       Consumer Protection Act Claims Against Honda, Subaru And VW?

The Court concludes that there are material differences between the various consumer protection acts of the 51 jurisdictions at issue.  There are significant differences not only in the language of the various acts, but also in the judicial decisions interpreting the acts.  Thus, a choice-of-law analysis is warranted.

Consumer protection act claims against these three Defendants were originally filed in New Jersey, New York, West Virginia, Michigan, and California.

A.    Actions Filed In New Jersey:

Three Plaintiffs (David Busch, Gordon Erdenberger, and Murle Kemp) originally filed

14

suit in New Jersey.  (*See* Chart attached as Ex. 8 to D.E. 170).  Busch asserts a consumer protection act claim against VW, while Erdenberger and Kemp assert consumer protection act claims against Subaru.[6]

In *P.V. v. Camp Jaycee*, the New Jersey Supreme Court changed the choice-of-law rules that apply to tort cases.  *P.V. v. Camp Jaycee*, 197 NJ 132, 962 A.2d 453 (2008).  It adopted a new framework for resolving conflict-of-law disputes arising out of tort claims – the most significant relationship test.  New Jersey's most significant relationship test consists of two prongs.

"The first prong of the analysis requires a court to examine the substance of the potentially applicable laws in order to determine if an actual conflict exists."  *Nafar v. Hollywood Tanning Sys., Inc*., 339 Fed.Appx. 216, 220 (3rd Cir. 2009).  Here, the Court is satisfied that there are material differences that exist among the applicable consumer protection acts.

"The second prong of the most significant relationship test requires the Court to weigh the factors enumerated in the Restatement section corresponding to the plaintiff's cause of action."  *Nafar*, 339 Fed.Appx. at 220.  When plaintiffs seek to assert claims under the NJCFA, the court should apply the "conflict of law analysis of Restatement Section 148 for claims sounding in fraud or misrepresentation."  *Id*.  That section "recognizes that the state in which a prospective plaintiff acted in reliance on a defendant's fraud is presumed to have the predominant relationship to the parties and the issues in the litigation."  *Id*. at 221; *see also*

---

[6]The named Plaintiffs who assert consumer protection act claims against Honda, Subaru and VW also assert consumer protection act claims against OnStar.  As stated *supra*, those claims against OnStar are governed by Michigan law.

*Agostino v. Quest Diagnostics, Inc.*, 256 F.R.D. 437 (D. N.J. 2009).

Here, Plaintiffs' consumer protection act claims are based upon the allegation that the Defendants failed to disclose to them that OnStar equipment using analog systems would be obsolete or require an upgrade.  (SMAC at ¶ 5).

Edenberger purchased his Subaru vehicle with manufacturer-installed OnStar equipment from a dealership in his home state of Pennsylvania, while Kemp purchased his from a dealership in his home state of Oregon.  (SMAC at ¶¶ 34, 35, 173 & 175).  Edenberger and Kemp each allege that "[a]t the time of purchase," they were not told the type of telematics equipment in the vehicle, that the equipment would fail after December 31, 2007, that the Manufacturer would not fix, repair or upgrade analog-only devices, or that they would have to pay to upgrade their system.  (SMAC at ¶ 173 & ¶ 175).  Moreover, they received and read written information about OnStar in their home states and had local representatives at the dealerships where they purchased their vehicles make oral representations to them.

Busch purchased his VW with manufacturer-installed OnStar equipment in his home state of New York from "Heart Chevrolet in Kingston, New York, an authorized Volkswagen dealer."  (SMAC at ¶¶ 16 & 137).  Busch also alleges that "[a]t the time of purchase," he was not told the type of telematics equipment in the vehicle, that the equipment would fail after December 31, 2007, that the Manufacturer would not fix, repair or upgrade analog-only devices, or that he would have to pay to upgrade the system.  (SMAC at ¶ 137).  Busch testified that he viewed a sign about the telematics system while at the Heart dealership in New York and that he verbally received information about the system from a sales manager at his local dealer.  (D.E. No. 164, Ex. 7 at 101-102).

Thus, Erdenberger, Kemp and Busch each acted in reliance on the alleged misrepresentations and/or omissions about the OnStar equipment by purchasing their respective vehicle in their respective home state. Accordingly, under New Jersey law, there is a presumption that their respective home states have the predominant relationship to the parties and issues in this action.

Then, the only question becomes whether any of the principles delineated in Section 6 of the Restatement rebut the presumption that each of these Plaintiff's home state has the most significant interest in litigating its residents' claims. Those factors are: 1) interstate comity; 2) the interests of the parties; 3) the interests underlying the substantive body of law; 4) the interests of judicial administration; and 5) the competing interests of the states. *Agostino,* 256 F.R.D. at 463.

The above factors to do not rebut the presumption. The interests of interstate comity favor the application of the law of each Plaintiff's state of residence. The interests underlying the substantive body of law and competing interests of the states also weigh in favor of applying the law of each Plaintiff's home state because each Plaintiff's home state has a significant interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its own citizens under its own laws.

B.      Action Filed In New York:

One individual (Jason Smith) originally filed suit in New York. (D.E. No. 170, Ex.8). Smith asserts a consumer protection act claim against Subaru. Thus, the Court would apply New York's choice-of-law rules to determine the law to be applied to Smith's consumer protection act claim. Before doing so, the Court notes that the status of Smith's claims is not clear because

Smith is currently not a named Plaintiff in the SMAC.[7]

At the March 30, 2010 hearing, Plaintiffs' Counsel indicated that Smith should have been named as a Plaintiff in the SMAC and that Plaintiffs would take the appropriate action to accomplish that.   In any event, under New York's choice-of-law rules, New York law would apply to Smith's consumer protection act claims.

New York has adopted an "interest analysis" for conflicts.  *Bergeron v. Philip Morris Inc.*, 100 F.Supp.2d 164,169 (E.D. New York 2000).  "The hallmark of the interest analysis is that '[j]ustice, fairness and, the best practical result, may best be achieved by giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation.'" *Id.* (quoting *Babcock v. Jackson*, 12 N.Y.2d 473, 481 (1963)).  When this interest analysis is applied to laws that regulate conduct, such as consumer protection laws, "the jurisdiction with the greater interest is the one in which the injury to the plaintiff is suffered."  *Watts v. Jackson Hewitt Tax Service*, *Inc.*, 579 F.Supp.2d 334, 345 (E.D. New York 2008); *Bergeron*, 100 F. Supp.2d at 169-70.  "For actions sounding in fraud and deceit, the substantive law of the state in which the injury is suffered, rather than the state where the fraudulent conduct was initiated, usually governs."  *Id.*

───────────────

[7]The MAC was filed on February 25, 2008.  At that time, the Smith action had not been transferred to this Court.  Smith filed his action in New York in February, 2008.  Smith was the only named plaintiff in that putative class action.  Smith also named Subaru Distributors Corp., a New York corporation operating in New York, as a Defendant.  The Smith action was transferred to this Court on April 15, 2008.  (D.E. No. 60).  Although the SMAC was filed approximately one year later (D.E. No. 113), it does not name Smith as a Plaintiff (*see* SMAC at ¶¶ 9- 36 & ¶¶ 129 - 189) and it does not name Subaru Distributors Corp. as a Defendant (*Id*. at ¶¶ 37-43).

Here, Smith is a New York resident seeking to bring a class action on behalf of other New York residents who purchased vehicles in New York.  Smith's alleged loss was suffered in his home state of New York and therefore New York law applies to his claim.

C.    Action Filed In West Virginia:

One Plaintiff (R.S. Reishman) originally filed suit in West Virginia.  (D.E. 170, Ex. 8). He asserts a consumer protection act claim against VW.

"In general, West Virginia [still] adheres to the conflicts of law doctrine of lex loci delicti.*" Ball v. Joy Manufacturing Co.*, 755 F.Supp. 1344, 1351 (S.D. W.Va. 1990) (quoting *Paul v. National Life*, 352 S.E.2d 550 (W.Va. 1986)).  "The West Virginia Supreme Court of Appeals, however, has on occasion utilized 'the standards set forth in the Restatement [(Second) of Conflicts] to resolve particularly thorny conflicts problems.'" *Ball*, 755 F.Supp. at 1351 (quoting *Oakes v. Oxygen Therapy Services*, 363 S.E.2d 130, 131 (W.Va. 1987)).

VW contends that West Virginia would apply the lex loci deliciti choice-of-law rule, which provides that the rights of the parties are governed by the law of the place of injury.  VW contends that Reishman's claim is therefore governed by West Virginia law because Reishman purchased and used his vehicle in West Virginia and his alleged injuries occurred there.

Plaintiffs do not dispute that, if the lex loci delicti choice-of-law rule is applied, West Virginia law would govern Reishman's claim.

Citing *Oakes*, however, Plaintiffs suggest that the Court should apply the law of the state having the most significant relationship to the transaction.  (*See* Pls.' Opening Br., Ex. 6).  Even if this Court were to apply that rule, however, the Court would still conclude that West Virginia has the most significant relationship to Reishman's consumer protection act claim.  Reishman's

alleged injury occurred in West Virginia, where Reishman resides and drives his vehicle, where he received the alleged misrepresentations, and where he purchased his vehicle.

     D.    <u>Actions Filed In Michigan</u>:

Several Plaintiffs originally filed suit in Michigan.  Charlie Allenson and Larnell Gill assert consumer protection act claims against Honda; Melvin and Betty Rubertt assert claims against Subaru; and Robert Shatz and Mark Vamos assert claims against VW.

In actions sounding in tort, "Michigan choice of law principles provide that Michigan law applies absent a rational reason – such as another states's interest – to apply other law." *Daimler-Chrysler Svs. North America, LLC v. Summit National, Inc.*, 289 Fed.Appx. 916, 921 (6th Cir. 2008) (citing *Sutherland v. Kennington Truck Service, Ltd.*, 454 Mich. 274 (1997)); *see also Williams v. Toys R Us,* 138 Fed.Appx. 798, 803 (6th Cir. 2005).  Under *Sutherland*, in determining whether a rational reason to displace Michigan law exists, a two-step analysis is applied.  *Williams*, 138 Fed.Appx. at 803.

First, the court "must determine if any foreign state has an interest in having its law applied.  If no state has such an interest, the presumption that Michigan law will apply cannot be overcome."  *Id.*

Second, if a foreign state does have an interest in having its law applied, the court must then "determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests."  *Id.*  If the analysis advances to this second step, the court must weigh the respective interests of the states that have an interest.  24 MICH. CIV. JUR. TORTS § 4; *Isley v. Capuchin Province*, 878 F.Supp. 1021, 1023 (E.D. Mich. 1995); *R. Ramakrishna v. Besser Co.*, 172 F.Supp.2d 926, 932 (E.D. Mich. 2001).  Those "respective interests are evaluated in

accordance with Section 145 of the *Restatement (Second) of Conflicts of Law*," wherein the following factors are considered: 1) the place where the injury occurred; 2) the place where the conduct causing the injury occurred, 3) the domicile, residence, place of incorporation and place of business of the parties; and 4) the place where the relationship is centered. *R. Ramakrishna*, 172 F.Supp.2d at 932.

       1.    <u>The Rubertts</u>:

The Rubertts are residents of Washington (SMAC at ¶ 11), they purchased their Subaru vehicle with OnStar equipment in Washington (SMAC at ¶ 181), and allege that representations concerning OnStar were made to them at the time of that purchase (SMAC at ¶ 96). As a result, Washington has an obvious interest in having its law applied to their claims. New Jersey, as Subaru's principal place of business also has an interest in having its law applied to a claim against a corporation operating in New Jersey. The Court must then proceed to the second step of determining if Michigan's interests mandate that Michigan law be applied, despite Washington and New Jersey's interests. To do this, the Court weighs the respective interests of these three states.

After weighing the respective interests, the Court concludes that Washington has the most significant interest in having its law applied to the Rubertts' consumer protection act claims.

First, the injury occurred in Washington, where the Rubertts purchased their vehicle and where they still reside and drive their vehicle.

As to the place where the conduct causing the injury occurred, the Rubertts allege that at the time they purchased their vehicle, they were not told the type of telematics equipment in their

vehicle, that the equipment would fail after December 31, 2007, or that the manufacturer would not fix, repair or upgrade analog-only devices.  (SMAC at ¶¶ 181).  Moreover, the Rubertts testified that they were given information regarding OnStar while at their local dealership.  Mr. Rubertts testified that he learned about OnStar from the sales representatives at the dealership in Washington and at a trade show in Spokane, Washington that was designed to sell new vehicles. (Ex. P to Subaru's Opening Br.)  He further testified that the Washington dealers touted the OnStar System.

The next factor is the domicile, residence, place of incorporation and place of business of the parties.  The Rubertts are residents of Washington.  Subaru is headquartered in New Jersey. This factor, standing alone, does not weigh significantly towards any one state.

The final factor is the place where the relationship is centered.   This factor weighs in favor of Washington law.  Again, Washington is the state where the Rubertts learned about OnStar, where they purchased their vehicle, where they had dealers make representations to them about OnStar, where they live, where they drive their vehicle, and where they use OnStar.

 Michigan has little or no interest in having its consumer protection act laws apply to class action claims asserted against a non-resident company, by non-residents who did not buy or lease their vehicles in Michigan.  Indeed, by enacting M.C.L. § 445.911(3), the Michigan Legislature attempted to prohibit such claims.  Thus, Michigan's interests do not mandate that Michigan law be applied to these claims against Subaru.  Washington, on the other hand, has a strong interest in protecting its own residents.

2.      The Gills And Allenson:

The Court reaches the same conclusion with respect to the consumer protection act claims asserted by the Gills and Allenson.

The Gills are residents of California (SMAC at ¶ 17), they leased their Acura vehicle with OnStar equipment in California (SMAC at ¶ 17), and allege that representations concerning OnStar were made to them at the time of that purchase (SMAC at ¶ 98).

Allenson is a resident of New York (SMAC at ¶ 28), he purchased his Acura[8] vehicle with OnStar equipment in New York (SMAC at ¶ 161), and alleges that representations concerning OnStar were made to him at the time of that purchase (SMAC at ¶ 98).

As a result, California has an obvious interest in having its law applied to the Gills' claims and New York has an obvious interest in having its law applied to Allenson's claim. California, as Honda's principal place of business also has an interest in having its law applied to a claim against a corporation operating in California. The Court must then proceed to the second step of determining if Michigan's interests mandate that Michigan law be applied, despite California and New York's interests.

After weighing the respective interests, California has the most significant interest in having its law applied to the Gills' consumer protection act claims and New York has the most significant interest in having its law applied to Allenson's claim.

First, the Gills' injury occurred in California, where they purchased their vehicle and where they reside and drive their vehicle. Allenson's injury occurred in New York, where he purchased his vehicle and where he resides and drives his vehicle.

As to the place where the conduct by Honda causing those alleged injuries occurred, the

---

[8]Honda sells and distributes Acura vehicles. (D.E. 120 at ¶ 39).

Gills and Allenson allege that at the time of their respective purchases in California and New York, they were not told the type of telematics equipment in their vehicles, that the equipment would fail after December 31, 2007, or that they would have to pay to upgrade their equipment. They allege that representations concerning OnStar were made to them by Honda at the time of their purchases. The Gills testified that, in making the decision to purchase or lease their vehicle, they relied on representations made by employees of their local dealership in conversations with representatives at the dealership and over the telephone.  (Gill Dep. at 27-29 & 89-90). Similarly, Allenson testified that in making the decision to purchase his OnStar-equipped vehicle, he relied on representations made by representatives of his local dealership.  (Allenson Dep. at 43-47).  Allenson also learned about the benefits of OnStar based on news stories about OnStar and advertisements by GM.  (*Id*. at 64-65 & 68).

Thus, this first factor weighs in favor of applying California law to the Gills' claims and New York law to Allenson's claims.

The next factor is the domicile, residence, place of incorporation and place of business of the parties.  The Gills are residents of California and Allenson is a New York resident.  Honda is headquartered in California.  This factor weighs in favor of applying California law to the Gills' claims but does not weigh significantly towards any one state as to Allenson's claims.

The final factor is the place where the relationship is centered.   This factor weighs in favor of applying the law of the Plaintiffs' respective home states.  Again, California is the state where the Gills learned about OnStar, where they purchased their vehicle, where they had dealers make representations to them about OnStar, where they live, where they drive their vehicle, and where they use OnStar.  Similarly, New York is the state where Allenson learned

about OnStar, where he purchased his vehicle, where he had dealers make representations to him

about OnStar, where he lives, where he drives his vehicle, and where he uses OnStar.

Again, Michigan has little or no interest in having its consumer protection act laws apply

to class action claims asserted against a non-resident company, by non-residents who did not buy

or lease their vehicles in Michigan.  Thus, Michigan's interests do not mandate that Michigan

law be applied to these claims against Honda.  California and New York, on the other hand, each

have a strong interest in protecting their own residents.

> 3.    <u>Shatz And Vamos</u>:

The Court also reaches the same conclusion with respect to the consumer protection act

claims asserted by Shatz and Vamos.

Shatz is a resident of Colorado (SMAC at ¶ 32), he purchased his Audi[9] vehicle with

OnStar equipment in Colorado (SMAC at ¶ 169), and he alleges that representations concerning

OnStar were made to them at the time of that purchase (SMAC at ¶ 93).

Vamos was a resident of New York when he purchased his VW vehicle with OnStar

equipment in New York (SMAC at ¶ 167) and he alleges that representations concerning OnStar

were made to him at the time of that purchase (SMAC at ¶ 93).

As a result, Colorado has an obvious interest in having its law applied to Shatz's claim

and New York has an obvious interest in having its law applied to Vamos' claims.  Virginia, as

VW's principal place of business also has an interest in having its law applied to a claim against

a corporation operating in Virginia.  The Court must then proceed to the second step of

---

[9]VW is the exclusive authorized importer and distributor of Audi vehicles in the U.S.
(D.E. No. 115 at ¶ 38).

25

determining if Michigan's interests mandate that Michigan law be applied, despite Colorado, New York and Virginia's interests.  To do this, the Court weighs the respective interests of these states.

After weighing the respective interests, the Court concludes that each Plaintiff's respective home state has the most significant interest in having its law applied.

First, the injury occurred in Colorado and New York, where Shatz and Vamos purchased their vehicles and where they reside and drive their vehicle.

As to the place where the conduct causing the injury occurred, Shatz and Vamos allege that at the time they purchased their respective vehicles in their respective home states, they were not told the type of telematics equipment in their vehicle, that the equipment would fail after December 31, 2007, or that the manufacturer would not fix, repair or upgrade analog-only devices.

The next factor is the domicile, residence, place of incorporation and place of business of the parties.  Shatz is a resident of Colorado and Vamos is a resident of New York.  VW is headquartered in Virginia.  This factor, standing alone, does not weigh significantly towards any one state.

The final factor is the place where the relationship is centered.   This factor weighs in favor of applying the law of Shatz and Vamos' respective home states.  Again, Colorado and New York are the states where Shatz and Vamos learned about OnStar, where they purchased their vehicle, where they had dealers make representations to them about OnStar, where they live, where they drive their vehicle, and where they use OnStar.

 Michigan has little or no interest in having its consumer protection act laws apply to

class action claims asserted against a non-resident company, by non-residents who did not buy or lease their vehicles in Michigan.  Thus, Michigan's interests do not mandate that Michigan law be applied to these claims against VW.  Colorado and New York, on the other hand, have a strong interest in protecting their own residents.

       E.     <u>Actions Filed In California:</u>

Robert Golish and John Kuller originally filed suit in California.  Golish asserts his consumer protection act claims against VW, while Kuller asserts his consumer protection act claims against Honda.

"California follows a 'governmental interests' analysis in resolving choice of law disputes."  *Lewelling v. Farmers Ins. of Columbus, Inc*., 879 F.2d 212, 216 (6th Cir. 1989); *Northland Ins. Co. v. Guardsman Products, Inc*., 141 F.3d 612, 617 (6th Cir. 1998).  "Under this approach, the appropriate law to be applied is determined by comparing the law of the competing jurisdictions and examining the competing interests of each jurisdiction in the application of its law to the issues at hand."  *Lewelling,* 141 F.3d at 216.  Where a true conflict exists, it should be resolved by "applying the law of the state whose interest would be the more impaired if its law were not applied."  *Northland Ins. Co.*, 141 F.3d at 617.

"California's choice of law standards employ an interest balancing approach not dissimilar to Michigan's."  *In Re Jackson National Life Ins. Co. Premium Lit*., 1997 WL 34711419 at * 3.  Because California's approach is so similar to Michigan's, the analysis under California's interest balancing approach leads to the same result as the preceding analysis under Michigan's choice-of-law rules.

Accordingly, the law of each Plaintiff's respective home state will govern his or her

consumer protection act claims.

V.    What Law Will Apply To The Warranty Claims Against Honda, Subaru and VW?

As a preliminary matter, the Court concludes that there are material differences between the various warranty laws of the 51 jurisdictions at issue. Thus, the Court needs to make a choice-of-law determination as to the warranty claims asserted against Subaru, Honda and VW.

Claims against these three Defendants were originally filed in New Jersey, New York, West Virginia, California and Michigan.

A.    Actions Filed In New Jersey:

Busch, Erdenberger, and Kemp originally filed suit in New Jersey. Busch asserts his warranty claims against VW, while Erdenberger and Kemp assert their warranty claims against Subaru.

Like Michigan, under New Jersey's choice-of-law rules, for claims sounding in contract, where there is no effective choice-of-law provision, the Court is to consider the following factors from Section 188 of the Restatement (Second) of Conflicts of Law: 1) the place of contracting; 2) the place of negotiation of the contract; 3) the place of performance; 4) the location of the subject matter of the contract; and 5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Century Indemnity Co. v. Mine Safety Appliances Co.*, 398 N.J. Super. 422, 435-36 (2008); *Gilbert Spruance Co. v. Pennsylvania Manufacturers Ass'n Insur. Co.*, 134 N.J. 96, 102-03 (1993).

These factors weigh in favor of applying the law of Kemp and Erdenberger's respective home states to their warranty claims. Kemp negotiated and purchased his vehicle in his home state of Oregon, where he resides and drives his vehicle. (SMAC at ¶¶ 35 & 175). At the time

of that sale in Oregon, Subaru provided Kemp with the written warranty that forms the basis for his warranty claims.  (SMAC at ¶ 94).  Similarly, Erdenberger negotiated and purchased his vehicle in his home state of Pennsylvania, where he resides and drives his vehicle.  (SMAC at ¶¶ 34 & 173).  At the time of that sale in Pennsylvania, Subaru provided Erdenberger with the written warranty that forms the basis for his warranty claims.  (SMAC at ¶ 94).

Similarly, the Court concludes that these factors weigh in favor of applying the law of Busch's home state to his warranty claims.  Busch negotiated and purchased his vehicle in his home state of New York, where he resides and where he drive his vehicle.  (SMAC at ¶¶ 16 & 137).  At the time of that sale in New York, VW provided him with the written warranty that forms the basis for his warranty claims.  (SMAC at ¶ 91).

B.    Action Filed In New York:

Smith originally filed suit in New York.  He asserts his warranty claims against Subaru.

For claims sounding in contract, New York applies a "center of gravity" test that considers the following factors set forth in Section 188 of the Restatement (Second) of Conflicts of Law:  1) the place of contracting; 2) the place of negotiation of the contract; 3) the place of performance; 4) the location of the subject matter of the contract; and 5) the domicile, residence, nationality, place of incorporation and place of business of the parties.  *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc*., 84 N.Y.2d 309, 317 (1994).  These are the same factors to be considered under Michigan and New Jersey's choice-of-law rules.

These factors weigh in favor of applying the law of Smith's home state of New York to his warranty claims. Smith negotiated and purchased his vehicle in his home state of New York, where he resides and where he drives the vehicle.  At the time of that sale in New York, Subaru

29

provided Smith with the written warranty that forms the basis for his warranty claims.

C.    Action Filed In West Virginia:

Reishman originally filed suit in West Virginia.  He asserts warranty claims against VW.

For contract based claims, where the contract specifies no choice of law, West Virginia applies the law of the state where the contract was made and is to be performed.  *American Select Ins. Co. v. Taylor*, 445 F.Supp.2d 681, 684 (N.D. W.Va. 2006); *see also Michigan Nat. Bank v. Mattingly*, 158 W.Va. 621, 624 (1975).

Here, Reishman resides in West Virginia, he purchased his vehicle in West Virginia (SMAC at ¶ 177), and received his warranty at the time of purchase in West Virginia (SMAC at ¶ 91 & 93).  Thus, West Virginia law will be applied to Reishman's warranty claims against VW.

D.    Actions Filed In Michigan:

Several Plaintiffs originally filed suit in Michigan.  Allenson and Gill assert consumer protection act claims against Honda; the Rubertts claims against Subaru; and Shatz and Vamos assert claims against VW.

Defendants assert that Plaintiff's warranty claims sound in contract and Plaintiffs agree that their warranty claims sound in contract.  (*See* D.E. No. 192 at 3).

Prior to 1995, the predominant view in Michigan had been that claims sounding in contract were construed according to the place where the contract was entered into.  *Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 302 (6th Cir. 2008) (citing *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448 Mich. 113 (1995)).  "However, that rule changed when the Michigan Supreme Court noted that '[t]he trend in this Court has been to move away from traditional

choice-of-law conceptions toward a more policy-centered approach.'"  *Id.*  "In *Chrysler*, the
Michigan Supreme Court endorsed the approach found in the Restatement (Second) of Conflict
of Laws; therefore, Michigan courts 'balance the expectations of the parties to a contract with the
interests of the state involved to determine which state's law to apply.'"  *Id.*  Under that
Restatement approach, in the absence of an effective choice of law by the parties, the contacts to
be taken into account include: 1) the place of contracting; 2) the place of negotiation of the
contract; 3) the place of performance; 4) the location of the subject matter of the contract; and 5)
the domicile, residence, nationality, place of incorporation and place of business of the parties.
*Id.*

   The written warranties provided to Plaintiffs do not contain a choice-of-law provision
and, for the reasons explained above, the Court concludes the choice-of-law provision in the
OnStar T&C's does not apply to the Manufacturer Defendants.  Thus, there is no effective
choice of law and the Court will proceed to analyze the above contacts in order to determine the
law to apply to the claims asserted by the Gills and Allenson.

   These contacts weigh in favor of applying the law of Allenson and the Gill's respective
home states to their warranty claims.  The Gills and Allenson negotiated and purchased their
respective vehicles in their respective home states of California and New York, where they
reside and where they drive their vehicles.  (SMAC at ¶¶ 17, 28, 139, 161).  At the time of those
sales in California and New York, Honda provided the Gills and Allenson with written
warranties, which form the basis for Plaintiffs' breach of warranty claims.  (SMAC at ¶ 97).

   These factors also weigh in favor of applying the law of the Rubertts' home state to their
warranty claims. The Rubertts negotiated and purchased their respective vehicle in their home

state of Washington, where they reside and where they drive their vehicle.  (SMAC at ¶¶ 11 &
181).  At the time of that sale in Washington, Honda provided the Rubertts with the written
warranty that forms the basis for their warranty claims.  (SMAC at ¶ 94).

Similarly, these factors weigh in favor of applying the law of Vamos and Shatz's
respective home states to their warranty claims.  Shatz negotiated and purchased his vehicle in
his home state of Colorado, where he resides and where he drive his vehicle.  (SMAC at ¶¶ 32 &
169).  At the time of that sale in Colorado, VW provided him with the written warranty that
forms the basis for his warranty claims.  (SMAC at ¶ 91).  Similarly, Vamos[10] negotiated and
purchased his vehicle in New York, where he resided at the time of purchase.  (SMAC at ¶ 167).

Accordingly, under Michigan's choice-of-law rules, the warranty claims asserted against
Subaru, Honda and VW will be governed by each Plaintiff's respective home state.

E.    Actions Filed In California:

Robert Golish and John Kuller originally filed suit in California.  Golish asserts his
consumer protection act claims against VW, while Kuller asserts his consumer protection act
claims against Honda.

Again, "California follows a 'governmental interests' analysis in resolving choice of law
disputes."  *Lewelling v. Farmers Ins. of Columbus, Inc*., 879 F.2d 212, 216 (6th Cir. 1989);
*Northland Ins. Co. v. Guardsman Products, Inc*., 141 F.3d 612, 617 (6th Cir. 1998).  "Under this
approach, the appropriate law to be applied is determined by comparing the law of the competing
jurisdictions and examining the competing interests of each jurisdiction in the application of its

---

[10]Although Vamos currently resides in Texas (SMAC at ¶ 31), at the March 30, 2010
hearing, Plaintiffs' Counsel agreed that New York should be considered his "home state."

law to the issues at hand." *Lewelling,* 141 F.3d at 216.  Where a true conflict exists, it should be resolved by "applying the law of the state whose interest would be the more impaired if its law were not applied." *Northland Ins. Co.*, 141 F.3d at 617.

Kuller purchased his vehicle equipped with OnStar equipment in Washington and therefore Washington has a legitimate interest in having its warranty laws protect its own residents.  Honda is headquartered in California and therefore California has a legitimate interest in regulating conduct within its borders.  Thus, both Washington and California have a legitimate interest in having their warranty laws apply to Kuller's claims.  The Court must therefore determine, with respect to those two states, the one whose interest would be more impaired if its warranty law were not applied.

Washington's interests would be most impaired if its warranty laws were not applied to Kuller's claims.  Kuller is a resident of Washington.  (SMAC at ¶ 27).  He purchased his vehicle equipped with OnStar equipment in Washington.  (SMAC at ¶ 159).  He received the written warranty at the time of purchase in Washington (SMAC at ¶ 97) and he drives his vehicle in Washington.  With respect to any oral representations that were made to Kuller, those representations were made at the time of the purchase (SMAC at ¶ 96) and thus were also made in Washington.

While Honda may be headquartered in California, and California has an interest in regulating conduct within it borders, as shown above, a significant amount of the conduct that forms the basis of Kuller's warranty claims in this action did not occur in California.  Moreover, California's interests would still be protected in that Plaintiffs who purchased or leased their vehicles in California would have California law apply to their claims.

Washington has a strong interest in having its warranty laws protect its own residents from in-state injuries caused by a foreign corporation and in delineating the scope of recovery for its own citizens under its warranty laws. Washington law applies to Kuller's warranty claims.

The Court reaches the same conclusion as to the warranty claims asserted by Golish. Golish purchased his vehicle equipped with OnStar equipment in California and therefore California has a legitimate interest in having its warranty laws protect its own residents.  VW is headquartered in Virginia and therefore Virginia has a legitimate interest in regulating conduct within its borders.  Thus, both California  and Virginia have a legitimate interest in having their warranty laws apply to Golish's claims.  The Court must therefore determine, with respect to those two states, the one whose interest would be more impaired if its warranty law were not applied.

California's interests would be most impaired if its warranty laws were not applied to Golish's claims.  Golish is a resident of California.  (SMAC at ¶ 29).  He purchased his vehicle equipped with OnStar equipment in California.  (SMAC at ¶ 163).  He received the written warranty at the time of purchase in California (SMAC at ¶ 91) and he drives his vehicle in California.  With respect to any oral representations that were made to Golish, those representations were made at the time of the purchase (SMAC at ¶ 93) and thus were also made in California.

While VW may be headquartered in Virginia, and Virginia has an interest in regulating conduct within its borders, as shown above, a significant amount of the conduct that forms the basis of Golish's warranty claims in this action occurred in California.  Moreover, Virginia's interests would still be protected in that Plaintiffs who purchased or leased their vehicles in

34

Virginia would have Virginia law apply to their claims.

California has a strong interest in having its warranty laws protect its own residents from in-state injuries caused by a foreign corporation and in delineating the scope of recovery for its own citizens under its warranty laws.  California law applies to Golish's warranty claims.

CONCLUSION

For the reasons set forth above, the Court hereby RULES that:

1)   The MCPA's limitation on class actions conflicts with Rule 23 of the Federal Rules of Civil Procedure and therefore does not prevent non-residents from pursuing a class-action under the MCPA;

2)   The choice-of-law provision in the OnStar Subscription Agreement's Terms and Conditions ("OnStar T&C's") governs the claims against OnStar, and therefore Michigan law applies to Plaintiffs' consumer protection act claims against OnStar;

3)   The choice-of-law provision in the OnStar T&C's does not govern claims against the Manufacturer Defendants, who are not parties to those agreements.  Thus, the Court must conduct a choice-of-law analysis to determine the law to be applied to the claims against the Manufacturer Defendants; and

4)   Under a proper choice-of-law analysis as to the consumer protection act and warranty claims asserted against Honda, Subaru and VW, the law of each Plaintiff's respective home state shall govern his or her claims.

IT IS SO ORDERED.

S/Sean F. Cox                                    
Sean F. Cox
United States District Judge

Dated:  August 25, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on

35

August 25, 2010, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager