# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN RE: ONSTAR CONTRACT LITIGATION | |
| | Case No. 2:07-MDL-01867 |
| THIS DOCUMENT RELATES TO: | Honorable Sean F. Cox |
| All Actions. | |

## PLAINTIFFS' MOTION TO EXCLUDE THE REPORT, SUPPLEMENTAL REBUTTAL REPORT, AND TESTIMONY OF CLAUDE R. MARTIN, JR. Ph.D.

Pursuant to Federal Rule of Evidence 702, Plaintiffs respectfully move for entry of an Order:

1.      Striking the Report of Claude R. Martin Jr., Ph.D.;

2.      Striking the Supplemental Rebuttal Report of Claude R. Martin Jr., Ph.D.;

3.      Striking the testimony of Claude R. Martin Jr., Ph.D.; and

4.      Granting such other and further relief as the Court may deem just and proper.

5.      Plaintiffs have sought concurrence in the relief requested herein.  Concurrence was not obtained.

Respectfully submitted,

Dated: November 8, 2010

_____/s/ David H. Fink_____
David H. Fink (P28235)
E. Powell Miller (P39487)
Darryl G. Bressack (P67820)
THE MILLER LAW FIRM, P.C.
Interim Lead Counsel for Plaintiffs
950 W. University Dr., Suite 300
Rochester, MI   48307
dhf@millerlawpc.com
248-841-2200

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

IN RE: ONSTAR CONTRACT LITIGATION

THIS DOCUMENT RELATES TO:

All Actions.

Case No. 2:07-MDL-01867

Honorable Sean F. Cox

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE REPORT,
SUPPLEMENTAL REBUTTAL REPORT,
AND TESTIMONY OF CLAUDE R. MARTIN, JR. Ph.D.**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND ............................................................................1

    A.      Nature Of The Proceedings And Relevant Allegations ...........................1

    B.      The Martin Report.....................................................................................1

III.    LEGAL STANDARD........................................................................................4

IV.     ARGUMENT .....................................................................................................5

    A.      Dr. Martin's Report Will Not Be Helpful to the Trier Of Fact................5

        1.      Martin failed to address the class definition .................................6

        2.      Martin's "marketing perspective" is skewed towards irrelevant conclusions.....................................................................................8

        3.      Martin's conclusions cause confusion ........................................10

        4.      Martin's opinions require no special expertise ...........................11

    B.      Dr. Martin's Expert Opinion Should be Stricken as Unreliable ...........13

        1.      Martin's opinions are based upon insufficient facts ...................13

        2.      Martin's opinions are unsupported by meaningful scientific study..........14

V.      CONCLUSION.................................................................................................16

### STATEMENT OF THE ISSUES PRESENTED

1.      Whether the Report, Supplemental Rebuttal Report and testimony of Claude R. Martin, Jr., Ph.D. should be stricken because they do not assist the Court in evaluating class certification when, among other things, Martin: purports to offer conclusions on the named plaintiffs ability to represent the class, but fails to address or even consider the actual class definition; offers a "marketing perspective" completely devoid of any relationship to Fed. R. Civ. P. 23; reaches conclusions that require no special expertise and are not properly the subject of expert opinion; and conflicts with testimony of the Defendants' other experts and thus is likely to cause confusion?

**Plaintiffs' Answer:**   Yes.

2.      Whether the Report, Supplemental Rebuttal Report and testimony of Claude R. Martin, Jr., Ph.D. should be stricken because they are unreliable, based upon insufficient facts and are not supported by any meaningful or relevant scientific or empirical study?

**Plaintiffs' Answer:**   Yes.

## INDEX OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)

*Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137 (1999)

Federal Rule of Evidence 702

# I.    INTRODUCTION

Pursuant to Federal Rule of Evidence 702, Plaintiffs hereby move this Court to strike the Report, Supplemental Rebuttal Report and testimony of Claude R. Martin, Jr., Ph.D. on the grounds that his opinions will not assist the trier of fact in evaluating class certification pursuant to Federal Rule of Civil Procedure 23 and his methodology is not sufficiently reliable.

# II.    FACTUAL BACKGROUND

## A.    Nature Of The Proceedings And Relevant Allegations[1]

This is a class action against OnStar, Volkswagen, Subaru, and Honda (the "Defendants") in connection with Plaintiffs' acquisition of OnStar equipment and services from August 8, 2002 to December 2006. The gravamen of this case is that the Defendants failed to warn consumers of the impending February 18, 2008 analog termination, before those consumers purchased or leased OnStar-equipped vehicles. The Defendants' unfair and deceptive decision was then followed by an equally unscrupulous decision to subsequently charge customers whose equipment could be replaced with equipment that could receive a digital signal for digital "upgrades." Many consumers did not have this option, as the equipment that Defendants sold them could not be "upgraded" and therefore those consumers were left with a completely useless piece of equipment.

## B.    The Martin Report

The Defendants have employed Claude R. Martin, Jr., Ph.D. ("Martin") as a purported expert in this case. Martin served his Report on January 15, 2010, his Supplemental Rebuttal Report on March 19, 2010, and was deposed on May 6, 2010.

---

[1] *See generally* the Factual Background section in Plaintiffs' Motions for Class Certification.

The problems with Martin's opinion and testimony begin with the completely ambiguous assignment and direction that he received. Martin was retained to "examine the complaint of plaintiffs,"[2] however the Defendants did not provide Martin with any guidance or instruction as to the types of inquiries and conclusions that would be relevant to class certification.[3] The Defendants' utter failure to properly apprise Martin of the types of information that would assist this Court in the class certification determination was particularly glaring in this case because Martin admits that he has never before submitted an expert opinion regarding class certification and that he did absolutely nothing to understand the criteria for class certification.[4] As a result, the Martin Report is predictably and completely irrelevant to the Court's analysis under Federal Rule of Civil Procedure 23.

In conjunction with this ill-defined assignment, Martin focused on "reviewing the deposition testimony of the named plaintiffs," which Martin claims would allow him to "determine if they and the vehicle owners and subscribers they purport to represent, acted in a common way…" *See* Exhibit 1, Page 11. However, Martin's analysis was irretrievably flawed because his entire evaluation was premised on a "marketing perspective" completely removed from the actual legal and factual claims asserted by the plaintiffs, including, shockingly, the actual class Martin purports to opine upon. The lack of fit between Martin's opinions and the facts of the case makes it impossible for his testimony to assist the trier of fact. Moreover, even the "marketing perspective" that Martin does offer is of no value because Martin admits that he did not even review the Defendants' marketing plans[5] or perform any rigorous studies to support his conclusions.[6]

---

[2] *See* Report of Claude R. Martin, Jr. ("Martin Report"), Page 6, attached hereto as Exhibit "1."

[3] *See* Deposition Testimony of Claude R. Martin, Jr., Pages 39-41, attached hereto as Exhibit "2."

[4] *See* Exhibit 2, Pages 48-49.

[5] *See* Exhibit 2, Page 198.

Martin reached the following conclusions that are relevant to this motion:

- Martin opined that based on certain limited criteria completely unrelated and irrelevant to the requirements of Rule 23, the named plaintiffs and the "vehicle owners and subscribers they purport to represent" did not act in a common way with regard to their purchase of OnStar service and equipment. *See* Exhibit 1, Page 11-18.

- Martin opined that based upon certain "behavioral and demographic characteristics" he had concerns with the "viability" of the named plaintiffs as representatives of "those who acquired OnStar or **could hav**e acquired OnStar during the case time period." *See* Exhibit 1, Pages 19-20 (emphasis added).

Martin considers himself an expert in marketing, as well as in adolescent smoking behavior,[7] expertise he has acquired in part through his various experiences as a paid consultant and retained litigation expert for the tobacco industry.[8] Martin, who has no technical knowledge of automotive telematic systems like those at issue in this case,[9] has admitted that his opinion is **not based upon the proposed class definition**[10] or even upon the universe of OnStar purchasers,[11] but rather, **based upon the "entire population of the United States."**[12] Consequently, Martin's opinion consists entirely of conclusions that bear no relation to the facts and circumstances of this case and have no

---

[6] *See* Exhibit 2, Pages 97-103.

[7] *See* Exhibit 2, Pages 11-12.

[8] *See Id. See also* Exhibit 2, Pages 27-33.

[9] *See* Exhibit 2, Pages 15-16.

[10] *See* Exhibit 2, Pages 81, 193

[11] *See* Exhibit 2, Pages 192.

[12] *See* Exhibit 2, Pages 83-84.

3

bearing upon the Rule 23 inquiry.  Because Martin's analysis offers nothing relating to any relevant class certification determination, Martin does not, and can not, provide any aid to this Court in evaluating class certification.[13]

### III.    LEGAL STANDARD

The use of expert testimony is governed by Federal Rule of Evidence 702, which states that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  As the U.S. Supreme Court made clear in *Daubert* and its progeny, Rule 702 requires that a district court perform a critical "gatekeeping" function concerning the admissibility of expert scientific, technical, and specialized evidence.  *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147-148 (1999).

Under Rule 702, expert testimony is admissible only if the trial court finds that three requirements are satisfied: (1) the expert "must establish his expertise by reference to knowledge, skill, experience, training, or education;" (2) the testimony is reliable, which requires that "the principles and methodology underlying the testimony itself are valid;" and (3) the testimony must "assist the trier of fact," which requires the testimony to "fit" the facts of the case.  *See Pride v. BIC Corp.*, 218 F.3d 566, 577-78 (6th Cir. 2000) (citations omitted).  The party seeking to admit expert

---

[13] In addition, Martin's opinions are unreliable as he proffered an unsubstantiated opinion without performing any specific customer survey or study to justify or support any of his conclusions.

testimony "must establish its admissibility by a preponderance of proof." *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert,* 509 U.S. at 592 n. 10).

Because Martin's Reports and testimony do not "fit" the facts of this case, because they are not reliable, and because they are not relevant to any element of the class certification determination, they should be stricken.

## IV.    ARGUMENT

### A.    Dr. Martin's Report Will Not Be Helpful to the Trier Of Fact

Helpfulness requires a "valid scientific connection to the pertinent inquiry as a precondition for admissibility." *Jahn v. Equine Services, PSC*, 233 F.3d 382, 388 (6th Cir. 2000) (quoting *Daubert*, 509 U.S. at 591-92). In other words, the expert "testimony must 'fit' the facts of the case, that is, there must be a connection between the scientific research or test result being offered and the disputed factual issues in the case in which the expert will testify." *Pride*, 218 F.3d at 578 (citing *Daubert*, 509 U.S. at 592). Determining whether expert testimony will assist the trier of fact requires a "preliminary assessment of … whether [the expert's reasoning or methodology] properly can be applied to the facts in issue." *Nelson*, 243 F.3d at 250-51 (quoting *Daubert*, 509 U.S. at 592-93).

Martin's opinions and conclusions must have a "valid scientific connection to the pertinent inquiry." *Jahn*, 233 F.3d at 388. The Martin Report and testimony was purportedly offered to address class certification, however Martin's analysis is willfully devoid of any relationship to the standards for class certification. The "pertinent inquiry" for purposes of class certification is governed by Rule 23.[14] Martin admits he did nothing to understand that inquiry in preparing his

---

[14] Under Rule 23(a), one or more members of a class may sue as a representative party on behalf of

report, testifying that the only thing he did to understand the criteria for class certification was to read this Court's Scheduling Order, a document that merely sets the deadline for "disclosures regarding Class Certification."  *See* Exhibit 2, Pages 49-50.

Not only did Martin fail to understand the inquiry to which his testimony was meant to apply, Martin also failed to "fit" his testimony to the facts of the case, including, astonishingly, not understanding the class definition.  Martin claims he evaluated the named plaintiffs' deposition testimony from a "marketing perspective," and acknowledges that he has no opinion on plaintiffs' actual factual and legal claims in this case.[15]  The fact that Martin failed to take the class definition into account in his attempts to "assist" this Court in its decision whether or not to certify that class is by itself sufficient to render his testimony useless.

### 1.      Martin failed to address the class definition

The first and most problematic of Martin's analytical defects is his failure to consider plaintiffs' class definition in his Report and testimony regarding the certification of that class. Martin's Report claims to provide an analysis and reach conclusions regarding the named plaintiffs and "the vehicle owners and subscribers they *purport to represent*."[16]  *See* Exhibit 1, Pages 11, 18

---

all only "if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  In addition to the Rule 23(a) factors, a class must satisfy one of the prongs of Rule 23(b) to maintain a class action, in this case, Rule 23(b)(3), which requires the court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Martin's opinion is not of any relevance to either inquiry because the theoretical marketing issues hypothesized by Martin have nothing to do with this Court's analysis.

[15] *See* Exhibit 2, Pages 183-84.

[16] Interestingly, Martin claimed to reach conclusions about the individuals the named plaintiffs "purported to represent," *see* Exhibit 2, Pages 161-166, but also claimed that in doing his analysis, he did not take into account the class definition, which identifies specifically the individuals that the named plaintiffs "purported to represent."  *See, e.g.,* Exhibit 2, Pages 81, 193.  It is unclear how

6

(emphasis added).  However, on multiple occasions during his deposition, Martin admitted that in completing his assignment he did not address the class definition at all.  For example, Martin specifically testified:

> Q:  [M]y question now is in coming to these conclusions … is the class definition relevant to those conclusions, the conclusions found on Page 20 and 21?
>
> A: I did not address – sorry, I did not address the class definition at all in my report.  In fact, I don't believe – I may be wrong, there might be one instance – I don't think I even used the word "class" anywhere in my report.

*See* Exhibit 2, Page 81.  *See also*, Exhibit 2, 128-129 (Martin did not factor in the proposed class definitions in his analysis).

Rather, Martin inexplicably evaluated the named plaintiffs to determine if they were a representative sample – from a marketing perspective – of not the class, but rather the entire United States population:

> Q: So when you looked at those 25 named plaintiffs …. you were not evaluating whether they provided a balanced sample of a particular -- or particularly defined class, but, rather, whether they provided a balanced sample, a random and appropriate scientific sample of the entire population of the United States?
>
> A: Yes.

*See* Exhibit 2, Page 83.  *See also* Exhibit 2, Page 94.

Despite the fact that he was submitting a report purportedly designed to assist this Court's determination of class certification -- and each Rule 23 factor is tied specifically to the class that a representative party seeks to represent -- Martin testified that he did not consider the class definition

---

Martin could reach conclusions about the class without even knowing the class definition.

in his Report, and did not address the class definition at all. Instead, Martin sought to determine if the named plaintiffs were representative of the entire United States population, an inquiry that is of no relevance to class certification and can not be helpful to the Court's determination. Thus, by Martin's own admission, there is no "connection between the scientific research or test result being offered [by Martin] and the disputed factual issues in the case." *Pride*, 218 F.3d at 578. Therefore, his opinion is not helpful.

### 2. Martin's "marketing perspective" is skewed towards irrelevant conclusions

Any doubt about the value of the Martin Report is resolved by his own admission that his analysis is solely based on marketing concepts that are not part of, or related to the Rule 23 factors:

> Q: I understand you are not working with a class definition, correct?
>
> A: That is correct.
>
> Q: So instead, you have created your own description of who you want to see the plaintiffs be representative of, correct?
>
> …
>
> A: I'm looking at it from a ***marketing perspective***. I am ***not*** looking at it from a ***legal perspective*** and trying to determine a class.

*See* Exhibit 2, Page 193 (emphasis added).

The decision to look at the named plaintiffs from a marketing perspective rather than a legal one makes Martin's opinions and testimony useless because he does not tailor his opinion to the relevant inquiry nor does it fit the facts at issue. For example, Martin concludes that the named plaintiffs are not representative because the selection "is heavily skewed toward older persons." *See* Exhibit 1, Page 20. Nothing in the class definition relates to age or any other demographic. Martin himself was unaware of any difference – because there was none – in the way the Defendants

8

marketed to individuals based on their age. *See* Exhibit 2, Page 206. Martin also testified that he did not believe that the age of an individual is relevant to assessing their ability to be misled by inadequate information from a seller. *See* Exhibit 2, Page 185-86. Because Martin offers no evidence that the age of the named plaintiffs made them atypical of class members[17] or created a conflict between the named plaintiffs and the class, his conclusion on the representative nature of the named plaintiffs is irrelevant to the Rule 23 inquiry and does not assist the trier of fact.

Martin also challenges the representative nature of the named plaintiffs because none of them is a "first time automotive buyer." *See* Exhibit 1, Page 20. Again, however, Martin was not aware of any difference in the way OnStar was marketed to first time buyers from how it was marketed to more experienced buyers,[18] nor does Martin opine or offer any evidence that first time buyers' interests are in conflict with those of more experienced buyers. Once again, Martin's conclusion is irrelevant to a class certification determination, and thus does not assist the trier of fact.

Among Martin's other entirely irrelevant opinions was his concern that there was a "bias in the named plaintiff sample in representation by attorneys," since there were five named plaintiffs who held that profession. *See* Exhibit 1, at 19. At his deposition, Martin said he was "just pointing it out," and later testified that his only concern was that he "didn't want everybody to have the same profession." *See* Exhibit 2, at 189-90. Nothing in Rule 23 or the class definition relates to the profession(s) of the named plaintiff(s) or the class members, making the professions of the named plaintiffs completely immaterial to the Court's inquiry. Martin summarized his concerns about the

---

[17] During his deposition, Martin essentially concedes that the named plaintiffs are typical of the members of the class by acknowledging that the named plaintiffs all purchased or leased vehicles equipped with OnStar telematics that relied upon an analog signal and thus would not function or would require an upgrade to function in the future. *See* Exhibit 2, Pages 194-95. Martin also concedes that his opinion does not address commonality by acknowledging he has no opinion on what questions of law or fact are being asserted in the case. *Id.*, Page 183-84.

[18] *See* Exhibit 2, Page 206-7.

9

named plaintiffs by stating, "my concern more is the exclusionary idea of the named plaintiff." *See*, Exhibit 2, at 188:12-17. The entire purpose of Rule 23, class certification, and the named plaintiff (or class representative) is to have one or more persons represent the interests of many. Martin once again has demonstrated his total lack of understanding of the class certification analysis and why his Report is of no help to this Court.

One of the most compelling examples of how the Martin Report provides no assistance to this Court is the fact that his analysis did not differentiate between class and non-class members. Martin opines that the absence of named plaintiffs that did not subscribe to OnStar, cancelled service shortly after purchase, or leased a vehicle and returned it makes the sample biased. *See* Exhibit 1, Page 20. Martin's opinion on this point is completely irrelevant, because the particular consumers he insists are absent are not members of the class as defined in plaintiffs' Second Master Amended Class Action Complaint (the "Complaint") or Motion for Class Certification. In the Complaint, plaintiffs identified classes limited to all individuals and entities in the United States who, as of December 31, 2007, were OnStar subscribers and who owned or leased a GM, Honda, Volkswagen, or Subaru motor vehicle with analog-only or analog/digital-ready OnStar equipment which had not been upgraded, or had been upgraded at the expense of the subscriber. Importantly, because the individuals that Martin identifies are not class members, they lack standing to represent the proposed class and could not satisfy Rule 23(a)(2), (a)(3), or (a)(4). Martin's criticism demonstrates his fundamental misunderstanding of the class definition, as well as class certification standards and process. Thus, his opinions are not helpful to this Court.

### 3. Martin's conclusions cause confusion

Given the fact that the class definition is limited to OnStar subscribers, Martin's conclusion that there is a lack of uniformity in buying motivation and the valuation of OnStar in the purchase decision, *see* Exhibit 1, Pages 20-21, is no help to the finder of fact. Bruce Strombom, another

expert witness offered by the Defendants, testified that he assumed a reasonable objective consumer who subscribes to OnStar places value on it. *See* Deposition Testimony of Bruce A. Strombom, Page 81, attached hereto as Exhibit 3. This conclusion is echoed by yet another expert witness offered by the Defendants, Richard Semenik, who agreed that people who paid to subscribe to the service found some value to it. *See* Deposition Testimony of Richard J. Semenik, Page 110, attached hereto as Exhibit 4.

Moreover, the fact that Martin's conclusions on the value of OnStar to class members are contradicted by the testimony of the Defendants' other experts shows that the Martin Report would cause confusion. Because the Martin Report is irrelevant to class certification and therefore has no probative value, any potential to create confusion renders the Report and testimony inadmissible as well. *See, e.g., Daubert*, 509 U.S. at 595 ("[A] judge assessing a proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules.... Rule 403 permits the exclusion of relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury....'" ) (quoting Fed. R. Evid. 403).

### 4.    Martin's opinions require no special expertise

Moreover, several of Martin's opinions do not require any special expertise to render, but instead are merely obvious (but irrelevant) conclusions from reviewing deposition testimony. Expert testimony is not helpful when it "merely deals with a proposition that is not beyond the ken of common knowledge." *Durmishi v. National Casualty Co.*, Case No. 09-11061, --- F.Supp.2d ----, 2010 WL 2629996, *17 (E.D.Mich. June 30, 2010) (J. Lawson) (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir. 1994)).[19] *See also U.S. v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004)

---

[19] "If everyone knows this, then we do not need an expert because the testimony will not 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Berry*, 25 F.3d at 1350 (quoting Rule 702).

(Expert testimony is helpful to the trier of fact "if it concerns matters that are beyond the understanding of the average lay person.").

The purported differences Martin identifies among the named plaintiffs in the section of his Report titled "Collectivity versus Individuality of the Named Plaintiffs" are superficial distinctions that are not only irrelevant to class certification, but that are apparent to even the "average lay person" from the named plaintiffs' deposition testimony. *See* Exhibit 1, Pages 11-18. As a result, Martin offers "nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262. For example, Martin claims that because six of the twenty five named plaintiffs had sold or traded their vehicle by 2009, "there is a valid conclusion of no commonality of behavior among named plaintiffs." *See* Exhibit 1, Page 12. While this particular "dimension" has no relevance to class certification,[20] it is clear that anybody could read the deposition transcripts of the named plaintiffs and observe that some had sold or traded their car and some had not. There is no need for an expert to render an opinion on these facts.[21] Importantly, while these differences may be interesting from a "marketing perspective," none of them are relevant for a Rule 23 determination, and as a result Martin's conclusions about those differences have absolutely no utility in "assist[ing] the trier of fact to understand the evidence or to determine a fact in issue" as required by Rule 702.

---

[20] At his deposition, Martin says that this information is "relevant because it tells you that all six of them are different in their subsequent behavior." *See* Exhibit 2, Pages 130-31. However, Rule 23 evaluates the class as it relates to the claims at issue, it does not include a requirement of absolute uniformity, particularly in future unrelated behavior.

[21] Other dimensions Martin "analyzes" include the number and types of cars a named plaintiff has or the specific way in which a named plaintiff activated, renewed, or used the OnStar system. While the fact of activation and renewal of OnStar service is relevant to establish that the plaintiffs were subscribers that valued the service, how activation and renewal was handled by each plaintiff has no bearing on the class certification analysis.

**B.   Dr. Martin's Expert Opinion Should be Stricken as Unreliable**

Reliability is evaluated based on certain general standards provided in Rule 702: testimony must be based on "sufficient facts or data;" testimony must be the "product of reliable principles and methods;" and the expert must apply "the principles and methods reliably to the facts of the case." *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 529 (6th Cir. 2008) (citing Rule 702).  In addition, *Daubert* lists several factors that courts may consider in evaluating scientific testimony, including "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community," *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 593-94), however, "[a] district court does not err in failing to mention the *Daubert* factors when they are not pertinent to assessing the reliability of a particular expert." *Ellis v. Gallatin Steel Co.,* 390 F.3d 461, 470 (6th Cir. 2004) (citing *Kumho*, 526 U.S. at 150).  The evaluation should be "flexible" and "tied to the facts of a particular case." *Kumho*, 526 U.S. at 150 (citing *Daubert*, 509 U.S. 591).

**1.   Martin's opinions are based upon insufficient facts**

In addition to their complete lack of relevance as discussed *supra*, several of Martin's opinions are unreliable because he lacks a sufficient factual basis to support them.  For example, Martin's opinion that, "there was a considerable selection of sources and amount of information … regarding service termination or upgrading for specific vehicles commencing in 2003,"[22] is without a factual basis because at his deposition, Martin testified that he did not review all of the documents that he identifies as "Information Available Concerning FCC Action."  *See* Exhibit 2, Page 61.  Moreover, Martin did not review the impact of the Defendants' FCC disclosures that he cites,[23] nor

---

[22] *See* Exhibit 1, Page 18.

[23] *See* Exhibit 2, Page 62.

did he review those disclosures in context.[24]  His conclusion with regard to the availability of

information on the effect of the AMPS sunset on OnStar is therefore unreliable.[25]

While Martin opines that the marketing of automobiles generally and OnStar in particular is a

"complex process that uses one-on-one marketing techniques and communications,"[26] he testified

that he never reviewed any of the Defendants' marketing plans:

> Q: You didn't see any evidence, did you, that OnStar or the manufacturers implemented
>
> a program of attempting some type of segmentation in the way they approached the
>
> marketplace of consumers who may purchase vehicles with OnStar, did you?
>
> A: *I didn't see any -- I didn't read their marketing plans, so I'm not privy to that.* But I
>
> am privy to understanding from the material that I reviewed, that the totality of the marketing
>
> effort was highly individualistic.

*See* Exhibit 2, Page 198 (emphasis added).  *See also* Exhibit 2, Page 197 (stating that he does not

have the marketing strategy of OnStar).  It is inappropriate for this Court to accept an opinion about

the "totality of the marketing effort" the Defendants employed when the expert offering that opinion

has failed to actually review the documents that define that effort.

## 2.    Martin's opinions are unsupported by meaningful scientific study

In addition, Martin's testimony is unreliable because he was not "as careful [in performing

his analysis for this case] as he would be in his regular professional work outside of paid litigation

consulting."  Advisory Committee notes to Rule 702 (citing *Sheehan v. Daily Racing Form, Inc.*,

104 F.3d 940, 942 (7th Cir. 1997)).  In other words, "[t]he expert must satisfy the trial court that he

---

[24] *Id.*, Page 66.

[25] This is not the first time that Martin has failed to offer a "sufficient factual basis" to support his
conclusions.  *See United States v. Central State Bank*, 621 F.Supp. 1276, 1287 (W.D.Mich. 1985).

[26] *See* Exhibit 1, Page 20.

14

'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field,'" *Durmishi* 2010 WL 2629996 at *19 (citing *Kumho*, 526 U.S. at 152). Martin admits that he did not perform such an analysis in this case, despite the fact that he also testified that litigation calls for an even more rigorous practice than the usual practice in the marketing field. *See* Exhibit 2, Pages 97-103.  The Martin Report and the conclusions it draws are completely unreliable and inadmissible.

Specifically, Martin testified that to do a "meaningful scientific study of consumer behavior regarding … the purchase of vehicles with OnStar telematics," would require the following steps: a complete literature search on OnStar and the telematics industry; conducting focus groups; constructing a questionnaire; pre-testing the questionnaire; determining a methodology for implementing the questionnaire; constructing the final questionnaire; final testing the questionnaire; selecting the sample of consumers for the questionnaire; validating every questionnaire and response; writing up survey rules; training interviewers; and verifying responses. *Id.*  Martin openly admitted that he had completed none of those steps in this case. *Id.*  Because Martin has not employed "the same level of intellectual rigor" in his analysis in this case that an expert in his field regularly would, Martin's Report and testimony are unreliable and should be stricken.

Martin has admitted that in formulating his opinions, he did not review all of the facts and data upon which he claims to rely.  In addition, Martin has admitted that he has been significantly less careful than he would be in his regular professional work outside his paid litigation consulting, while also acknowledging that testifying in litigation requires that he be even more thorough.  Quite simply, Martin's Reports and testimony are not reliable as required by Rule 702 and should therefore be completely stricken.

## V.     CONCLUSION

For the reasons set forth above, Plaintiffs respectfully submit that this Court should strike Dr.

Martin's Report, Supplemental Rebuttal Report and testimony.

Respectfully submitted,

Dated:  November 8, 2010               _____/s/ David H. Fink_____
                                       David H. Fink (P28235)
                                       E. Powell Miller (P39487)
                                       Darryl G. Bressack (P67820)
                                       THE MILLER LAW FIRM, P.C.
                                       Interim Lead Counsel for Plaintiffs
                                       950 W. University Dr., Suite 300
                                       Rochester, MI   48307
                                       dhf@millerlawpc.com
                                       epm@millerlawpc.com
                                       248-841-2200

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 8, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send such notification to all ECF attorneys of record. Pursuant to the Court's Case Management Order NO.1 dated January 25, 2008 at § XIII, service is not required on any party not registered for ECF.

<div style="margin-left:40%">

Respectfully submitted,

</div>

Dated: November 8, 2010

<div style="margin-left:40%">

 /s/ David H. Fink
David H. Fink (P28235)
E. Powell Miller (P39487)
Darryl G. Bressack (P67820)
THE MILLER LAW FIRM, P.C.
Interim Lead Counsel for Plaintiffs
950 W. University Dr., Suite 300
Rochester, MI 48307
dhf@millerlawpc.com
epm@millerlawpc.com
248-841-2200

</div>