UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE GENERAL MOTORS
ONSTAR LITIGATION

CASE NO. 2:-CV--DT
JUDGE SEAN F. COX
MAGISTRATE JUDGE PAUL KOMIVES

_____/

**REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION TO EXCLUDE THE
REPORT, SUPPLEMENTAL REBUTTAL REPORT, AND TESTIMONY OF CLAUDE
R. MARTIN, JR., Ph.D. (docket #265)**

I.       RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
II.      REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
         A.    *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
               1.    *Plaintiff's Motions for Class Certification* . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
               2.    *Defendants' Expert Reports* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
               3.    *The Current Motion and Arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
         B.    *Legal Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
               1.    *Class Certification under Rule 23* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
               2.    *Expert Testimony under Rule 702* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8
         C.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
               1.    *Helpful to the Trier of Fact* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
                     a. Failure to Address the Class Definition . . . . . . . . . . . . . . . . . . . . . . . . .  12
                     b. Martin's "Marketing Perspective" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12
                     c. Confusion and Necessity of Special Expertise . . . . . . . . . . . . . . . . . . . . .  14
               2.    *Reliability* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
                     a. Insufficient Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
                     b. Meaningful Scientific Study . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16
         D.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17
III.     NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*        *        *        *        *

I.       RECOMMENDATION: The Court should deny plaintiffs' motion to exclude the report,

supplemental rebuttal report, and testimony of defense expert Claude R. Martin (docket #265).

II.      REPORT:

A.       *Background*

         This multidistrict litigation is brought by multiple plaintiffs against defendants OnStar,

Volkswagen, Subaru, and Honda, in connection with the plaintiffs' acquisition of OnStar equipment

and services from August 8, 2002, through December 2006.  Plaintiffs allege that defendants failed

to warn them, prior to their purchase or lease of OnStar equipped vehicles, of an impending February 18, 2008, termination of analog services and change to digital services only, which rendered their OnStar equipment obsolete. Plaintiffs allege that defendants then charged them to replace their analog equipment with equipment which could receive a digital signal, and that many consumers were unable to have their equipment upgraded, leaving their OnStar equipment useless.

1.     *Plaintiff's Motions for Class Certification*

In separate motions currently pending before Judge Cox, plaintiffs seek class certification under Rule 23. Specifically, plaintiffs seek certification of 13 separate classes:

- "All individuals and entities, who are residents of Washington, California, New York or Florida, who between August 8, 2002 and December 2006, purchased or leased a Honda vehicle that was equipped with an OnStar system, who subscribed to OnStar service as of December 31, 2006, and who owned or leased the vehicle as of December 31, 2007." Plaintiffs seek a separate class for the residents of each state.

- "All individuals and entities, who are residents of Washington, Pennsylvania, New York or Oregon, who between August 8, 2002 and December 2006, purchased or leased a Subaru vehicle that was equipped with an OnStar system, who subscribed to OnStar service as of December 31, 2006, and who owned or leased the vehicle as of December 31, 2007." Plaintiffs seek a separate class for the residents of each state.

- "All individuals and entities, who are residents of either California, Colorado, New York or West Virginia, who between August 8, 2002 and December 2006, purchased or leased a Volkswagen vehicle that was equipped with an OnStar system, who subscribed to OnStar service as of December 31, 2006, and who owned or leased the vehicle as of December 31, 2007." Plaintiffs seek a separate class for the residents of each state.

- "All persons or entities residing in the United States who between August 8, 2002 and December 2006, purchased or leased a vehicle equipped with an analog OnStar system and were subscribers as of December 31, 2006 and who owned the vehicles as of December 31, 2007, (1) for whom no upgrade to digital service was offered, or (2) who paid for or were required to pay to upgrade to digital OnStar service." This class is proposed for the purpose of asserting claims under the Michigan Consumer Protection Act.

2

In support of their motions for class certification, plaintiffs argue *inter alia* that the predominance, commonality, and typicality requirements of Rule 23(a) are satisfied because OnStar and the other defendants marketed the OnStar product and service consistently to all consumers.

2.      *Defendants' Expert Reports*

The dispute currently before the Court involves the reports of defendants' expert, Claude R. Martin, Jr., Ph.D.  Dr. Martin is a Professor Emeritus of Marketing and Retail Marketing at the University of Michigan.  He is a co-editor of the *Journal of Current Issues and Research in Advertising*, and also serves on the editorial review boards of, or as an ad-hoc reviewer for, several other marketing publications.   He has served as a consultant to a number of automobile manufacturers and automotive related companies, and has extensive litigation and consulting experience. *See* Pl.'s Mot., Ex. 1, Expert Report of Claude R. Martin, Jr., at 2-6 [hereinafter "Martin Report"].  In preparing his initial report, dated January 15, 2010, Martin reviewed a number of documents, including: (1) the complaint; (2) OnStar's responses to plaintiff's interrogatories; (3) the OnStar Vehicle Upgrade Summary dated November 19, 2007; (4) deposition transcripts and exhibits involving (a) auto dealers Thomas Keery and Richard Lamping, (b) defense witnesses, and (c) named plaintiffs; and (5) various other documents submitted in this case.  *See id*. at 6-8.

Dr. Martin's report provides an overview of the automotive buying system, including the automotive retail environment, the role of the customer, and the role of the salesperson.  *See id*. at 8-11.  The focus of Martin's analysis was on "reviewing the deposition testimony of the named plaintiffs" to "determine if they and the vehicle owners and subscribers that they purport to represent, acted in a common way, or in several different ways with respect to their vehicle purchase decisions and, particularly, the acquisition of OnStar service and equipment."  *Id*. at 11.  Martin

"evaluated each of the named plaintiffs' deposition transcripts and found uniqueness among them on numerous dimensions," *id.*, including ownership of other vehicles equipped or not equipped with OnStar; background of the plaintiffs; pre-purchase search in terms of length, sources of information, pre-purchase comparisons, and internet searching; buying motivation; use of a "buying pal"; the principal driver of the vehicle; and post-purchase behavior including OnStar activation, renewal, usage, longevity, when plaintiffs' learned of the termination of analog service, and their reaction to that termination. *See id.* at 11-16. Martin also opines, based on Federal Communication Commission (FCC) publications, magazine articles, and publications by the defendant automakers and OnStar, that "(1) there was a considerable selection of sources and amount of information coming from the manufacturers and OnStar regarding service termination or upgrading for specific vehicles commencing in 2003; and (2) there is no uniformity among named plaintiffs as to timing, kind and source of information received with [a] widespread practice of selective exposure, perception and/or retention of that information among the named plaintiffs." *Id.* at 18.

Martin further opines that there are problems with respect to the representative nature of the class. Specifically, the class representatives: (1) do not include customers who purchased OnStar equipped vehicles but elected not to subscribe or terminated their service shortly after the vehicle purchase; (2) are heavily skewed to older persons, who are generally considered to be "limited problem solvers" in making a vehicle purchase, as opposed to younger consumers who are "extensive problem solvers"; (3) are skewed 2-to-1 in favor of those with systems that could not be upgraded; (4) is biased in favor of attorneys, who constitute 20% of the named plaintiff sample, and (5) is unrepresentative of the total population of vehicle buying consumers. *See id.* at 18-20.

Martin reaches "several conclusions with a reasonable degree of certainty based on [his]

experience, education, and sound marketing principles." *Id*. at 20. Specifically, he opines that: (1) "even the named plaintiffs identified by deposition are so different along the multiple dimensions discussed that no uniformity can be identified"; (2) the named and proposed plaintiffs "cannot be treated in some aggregate way" because "[t]o determine the basis for the valuation of OnStar as part of the product offering it is necessary to look at each individual and discrete transaction"; (3) "major elements of motor vehicle consumers who would acquire OnStar during the case period have been ignored in the selection of named plaintiffs"; (4) the named plaintiff sample is biased because it fails to include "those who bought OnStar equipped vehicles, but elected to either not subscribe to the service or canceled soon after purchase," as well as those who "leased a vehicle and returned it, along with their OnStar service, at the end of the lease"; and (5) a trier of fact "would have to look at each individual sales transaction to determine the motivation for the purchase and the contribution, if any, OnStar made to the sale." *Id*. at 20-21.

Martin prepared a supplemental rebuttal report. In this report, dated March 19, 2010, Martin disputes several of the conclusions of Dr. Warren J. Keegan, plaintiffs' class certification expert. Martin was also deposed on May 6, 2010. That deposition lasted 8½ hours and covers 232 transcript pages.

3.    *The Current Motion and Arguments*

The matter is currently before the Court on plaintiffs' motion to exclude the report, supplemental rebuttal report, and testimony of Dr. Martin, filed on November 9, 2010. Plaintiffs contend that Martin's reports and testimony are not admissible expert testimony under Rule 702. Specifically, plaintiffs contend that: (1) Dr. Martin's report will not be helpful to the trier of fact because (a) Martin failed to address the class definition, (b) Martin's marketing perspective is

skewed towards irrelevant conclusions, (c) Martin's conclusions cause confusion, and (d) Martin's opinions require no special expertise; and (2) Dr. Martin's expert opinion should be stricken as unreliable because it is (a) not based upon sufficient facts, and (b) not supported by meaningful scientific study.  Defendants respond that Martin's opinions are relevant and reliable, and based on the same methodology employed by plaintiff's own expert.  Plaintiffs filed a reply, reiterating their arguments that Martin's opinions are unreliable and irrelevant.  For the reasons that follow, the Court should deny plaintiffs' motion to exclude Dr. Martin's reports and testimony.[1]

B.    *Legal Standards*

1.    *Class Certification under Rule 23*

Because plaintiffs argue that Dr. Martin's opinion will not assist the Court in determining whether class certification is appropriate, the class action requirements of Rule 23 are relevant to the Court's analysis.  Rule 23 provides:

The standards governing certification and maintenance of class actions are set forth in Rule 23 of the Federal Rules of Civil Procedure.  In relevant part, Rule 23 provides:

(a) **Prerequisites to a Class Action**. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties

---

[1]The Court referred the matter to me for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A).  Although I generally have the authority to determine a motion such as this under § 636(b)(1)(A), *see Iacangelo v. Georgetown Univ.*, No. 05-2086, 2010 WL 4807082, at *3 (D.D.C. Nov. 19, 2010), the magistrate judge statute explicitly provides that a magistrate judge does not have jurisdiction to determine a motion "to dismiss or to permit maintenance of a class action." 28 U.S.C. § 636(b)(1)(A). My authority with respect to such a motion is limited to issuing a report and recommendation under § 636(b)(1)(B).  Because this motion to strike is so closely linked to the motions for class certification, I respectfully submit this Report and Recommendation in lieu of a determination of the matter. *Cf. Hyde v. Vermeer Mfg. Co.*, No. SA-06-CV-0191, 2007 WL 2329688 (W.D. Tex. Aug. 7, 2007) (submitting report and recommendation with respect to motions to strike expert testimony).

will fairly and adequately protect the interests of the class.

       (b) **Class Actions Maintainable**. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

       (1) the prosecution of separate actions by or against individual members of the class would create a risk of

       (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

       (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

       (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

       (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

FED. R. CIV. P. 23.  As the language of the rule makes clear, a class action may not be certified unless the named plaintiffs satisfy all four of the prerequisites set forth in subdivision (a), as well as at least one of the conditions set forth in subdivision (b).  *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).  The named plaintiffs bear the burden of establishing these prerequisites.  *See id.*  Because a class action binds parties not involved, and perhaps not aware, of the class action, certification of a class implicates interests protected by the Due Process Clause.  For this reason, a court must conduct a "rigorous analysis" of the Rule 23 factors before certifying a class action.  *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).

       2.      *Expert Testimony under Rule 702*

The admissibility of scientific or other specialized knowledge is governed by Rule 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or date, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. This rule codifies, but does not alter, the standard adopted by the Supreme Court in *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993). Under the *Daubert* standard, Rule 702's reference to "scientific knowledge" sets a standard of reliability, *see id.* at 589-90, and its requirement that the scientific knowledge be such that it "will assist the trier of fact" in determining an issue in the case sets a standard of relevance, *see id.* at 591-92. Rule 702 thus entails a "gatekeeping function" which requires the trial judge to determine, at the outset, "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id.* at 592. Further, the *Daubert* standard applies to all expert testimony propounded under Rule 702, not just to scientific testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999). Thus, in order to be admissible at trial, the proponent of the testimony must establish that (1) the expert is qualified; (2) the testimony will assist the trier of fact to understand the evidence or determine a fact at issue; and (3) the testimony is "reliable" within the meaning of Rule 702. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008); *Pride v. BIC Corp.*, 218 F.3d 566, 577-78 (6th Cir. 2000).

In *Daubert*, the Court explained that evidentiary reliability is not the same as scientific reliability, but rather is based on scientific validity. *See Daubert*, 509 U.S. at 590-91 n.9. Although

the distinction is a fine one, scientific validity refers to the procedures used to produce the end result, not the scientific reliability of the ultimate result. *See id.* Thus, in order to qualify as "scientific knowledge"–*i.e.*, be deemed reliable–under Rule 702, "an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation–*i.e.*, 'good grounds,' based on what is known." *Id.* at 590. The courts have identified a number of factors relevant to the reliability inquiry. The advisory committee notes to Rule 702 set forth ten factors developed by the courts which may be helpful in addressing the reliability question. The first five come from the *Daubert* decision itself, and are:

(1.)    "whether the expert's technique or theory can be or has been tested–that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability;"

(2.)    "whether the technique or theory has been subject to peer review and publication;"

(3.)    "the known or potential rate of error of the technique or theory when applied;"

(4.)    "the existence and maintenance of standards and controls;" and

(5.)    "whether the technique or theory has been generally accepted in the scientific community."

FED. R. EVID. 702, advisory committee notes to the 2000 amendments; *see also*, *Daubert*, 509 U.S. at 593-94. Other relevant factors include:

(6.)    "Whether experts are 'proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying.' *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995)."

(7.)    "Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)[.]"

(8.)    "Whether the expert has adequately accounted for obvious alternative explanations."

(9.)     "Whether the expert 'is being as careful as he would be in his regular professional work outside his paid litigation consulting.' *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997)."

(10.)    "Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would expect to give."

FED. R. EVID. 702, advisory committee notes to the 2000 amendments.

The approach under *Daubert* is "a flexible one," *Daubert*, 509 U.S. at 594, and these factors are "neither definitive, nor exhaustive, and may or may not be pertinent to the assessment in any particular case." *Nelson*, 243 F.3d at 251 (citing *Kumho Tire*, 526 U.S. at 141). All of these factors "do not . . . necessarily apply" in every case, *Kumho Tire*, 526 U.S. at 151, and the trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id*. at 152. This is particular true where, as here, the Court is considering not scientific testimony but testimony in a field of social science, onto which the *Daubert* factors "do not map easily." *Durmishi v. National Cas. Co.*, 720 F. Supp. 2d 862, 881 (E.D. Mich. 2010) (Lawson, J.). In short, a trial court should consider those factors that are, in the particular case, "reasonable measures of the reliability of expert testimony." *Id.*

Further, "a full-blown *Daubert* investigation is premature at the class certification stage." *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 644 (S.D. Ala. 2005). In the context of a motion for class certification, "'testimony should be judged on the basis of whether it supports class certification–not whether it meets the standards for admission at trial.' Therefore, a district court need only 'ensure that the basis of the opinion is not so flawed that it would be inadmissible as a matter of law.'" *Walsh v. Principal Life Ins. Co.*, 266 F.R.D. 232, 237 (S.D. Iowa 2010) (quoting *Bennett v. Nucor Corp.*, No. 3:04-cv-0291, 2006 WL 2473015, at *11 (E.D. Ark. Aug. 25, 2006) and *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 134-35 (2d Cir. 2001)); *see also*, *Sullivan v.*

10

*Kelly Servs., Inc.*, 268 F.R.D. 356, 359 n.1 (N.D. Cal. 2010) ("At the class certification stage of the proceedings, 'robust gatekeeping' of expert evidence is not required; rather, the Court must assess only whether expert evidence is useful in evaluating whether class certification requirements have been met."); *McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 604 (S.D. Cal. 2007) ("At the class certification stage, courts apply a lower *Daubert* standard to analyze the admissibility of expert testimony."); *Serrano v. Cintas Corp.*, No. 04-10432, 2009 WL 910702, at *2-*3 (E.D. Mich. Mar. 31, 2009) (Cox, J.) (striking expert report and testimony at class certification stage would be inappropriate; rather, the court should "carefully consider [the] evidence and . . . give it as much weight as is appropriate under the circumstances.").

C.      *Analysis*

Defendants present Dr. Martin's expert opinion to help them establish that claims of the named plaintiffs and the members of the purported classes lack both commonality and typicality as required by Rule 23(a)(2) and (3).  Dr. Martin's opinion also suggests that individual issues will predominate over any common issues of law and fact.  While plaintiffs do not contest Dr. Martin's qualifications, they do contend that his reports and testimony fail to satisfy the other two requirements of Rule 702.  First, they contend that the reports will not assist the Court in making its class certification decision, and second they contend that Dr. Martin's opinions are unreliable.  The Court should reject each of these arguments.

1.      *Helpful to the Trier of Fact*

Plaintiffs first contend that Dr. Martin's report is irrelevant under Rule 702–that is, that it will not assist the trier of fact–for four reasons.  First, they contend that Dr. Martin failed to address the class definition.  Second, they contend that his use of a "marketing perspective" is skewed

towards irrelevant conclusions. Third, plaintiffs argue that Martin's conclusions cause confusion. And fourth, they contend that Martin's opinions require no special expertise.

### a. Failure to Address the Class Definition

Plaintiffs first contend that Dr. Martin's opinions are irrelevant because, as Martin admitted in his deposition, he did not address the class definitions set forth in the complaint or motions for class certification. Other than noting this fact and presuming that it renders Martin's opinion irrelevant, however, plaintiffs do not explain how Martin's opinions are irrelevant in light of his failure to consider the specific class definitions. The point of Martin's report is that in light of the nature of the retail automotive market and the different perspectives, information, and experience each customer brings to the transaction, the individual factors entitling plaintiffs to relief will predominate over the common elements of the claims. It does not appear from Dr. Martin's report that this conclusion depends on the precise manner in which the class or classes themselves are defined. What weight to accord Dr. Martin's conclusions is not at issue here; suffice it to say, that his conclusions are relevant to the factors governing the Court's consideration of whether a class action is appropriate.

### b. Martin's "Marketing Perspective"

Plaintiffs next argue that because Martin testified that he looked at the issue "from a marketing perspective," rather than from a legal perspective, his "opinions and testimony [are] useless because he does not tailor his opinion to the relevant inquiry nor does it fit the facts at issue." Pl.'s Br., at 8. This argument fails for the same reason as the prior argument. It is the job of the Court, not an expert, to determine whether the legal requirements of class certification have been met. The only question under Rule 702 is whether Martin's opinion will aid the Court in making

12

this determination.  The fact that he approached the issue from a "marketing perspective" does not render his opinion irrelevant.  As noted above, the point of Martin's opinion is that, precisely because of the nature of the automotive retail market, individual issues predominate over common ones.  Indeed, plaintiffs themselves argue that OnStar's marketing message was consistent in support of their motion for class certification as to OnStar, and their own expert discusses "marketing perspective" issues such as OnStar's marketing materials, customer expectations, and seller knowledge.  *See* Br. in Supp. of Pl.s' Amended Mot. for Class Certification as to OnStar, at 10-14 & Ex. B.[2]

In both their second amended and proposed third amended complaints, plaintiffs allege that defendants' conduct violated the consumer protection laws of all 50 states.  With the possible exception of the Iowa statute, each of these consumer protection statutes requires, either on its face or through judicial interpretation, that the plaintiff establish actual damages caused by the defendants' violation of the state act.[3]  Martin's report essentially opines that the issues of causation

---

[2]To be sure, not everything in Martin's reports or testimony is relevant.  For example, his conclusion that the class is not representative of the car-buying public is not relevant, because there is no requirement that a class certified under Rule 23 contain a representative cross-section of the entire nation.  The Court is well equipped, however, to consider only those opinions which are relevant to the Rule 23 class certification inquiry, and the inclusion of some irrelevant matter does not justify striking the entirety of Dr. Martin's opinions.

[3]*See* ALA. CODE § 8-19-10; ALASKA STAT. § 45.50.531(a); *Sellinger v. Freeny Mobile Home Sales, Inc.*, 521 P.2d 1119 (Ariz. 1974) and *Nataros v. Fine Arts Gallery of Scottsdale, Inc.*, 612 P.2d 500 (Ariz. Ct. App. 1980); ARK. CODE. ANN. § 4-88-113(f); CAL. CIV. CODE § 1780(a); COLO. REV. STAT. § 6-1-113(1); CONN. GEN. STAT. § 42-110g; DEL. CODE ANN. tit. 6, § 2525; FLA. STAT. § 501.211(1); GA. CODE ANN. § 10-1-399(a); HAW. REV. STAT. § 480-13(b); IDAHO CODE ANN. § 48-608(1); 815 ILL. COMP. STAT. 505/10a; IND. CODE § 24-5-0.5-4(a); KAN. STAT. ANN. 50-634(a) and *Finstad v. Washburn Univ. of Topeka*, 845 P.2d 685 (Kan. 1993); KY. REV. STAT. ANN. 367.220(1); LA. REV. STAT. ANN. § 51:1409(A); ME. REV. STAT. tit. 5, § 213; MD. CODE ANN. COM. LAW § 13-408(a); MASS. GEN. LAWS ch. 93A, § 9(1) and *Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250 (1st Cir. 2010); MICH. COMP. LAWS § 445.911(2); MINN. STAT. § 8.31(3a); MISS. CODE ANN. § 75-24-15(1); MO. REV. STAT. § 407.025; MONT. CODE ANN. § 30-14-133(1); NEB. REV. STAT. § 59-1609; NEV. REV. STAT. § 41.600 and *Sobel v. Hertz Corp.*, 698

and damages are unique to each individual, bearing on whether a class action is appropriate.  His

opinion is therefore relevant within the meaning of Rule 702.[4]

### c. Confusion and Necessity of Special Expertise

In their final two arguments with respect to relevance, plaintiffs argue that Dr. Martin's

opinions will cause confusion because they are, in some respects, contradicted by the opinions of

defendants' other experts, and that some of his conclusions require no special expertise.  Neither of

these arguments provides a basis for striking Martin's reports and testimony.  As to the first, "[t]he

mere fact that two experts disagree is not grounds for excluding one's testimony."  *Feliciano-Hill*

*v. Principi*, 439 F.3d 18, 25 (1st Cir. 2006); *see also*, *In re Neurontin Marketing, Sales Practices &*

*Prods. Liability Litig.*, 612 F. Supp. 2d 116, 131 (D. Mass. 2009); *McCloud ex rel. Hall v. Goodyear*

*Dunlop Tires N. Am., Ltd.*, 479 F. Supp. 2d 882, 893 (C.D. Ill 2007).  Plaintiffs' argument that

Martin's opinions are excludable under Rule 403 because they will cause confusion is misplaced

because "Rule 403 has no application where the court sits as both trier of fact and law."  *Miller v.*

*City of Cincinnati*, 709 F. Supp. 2d 605, 620 (S.D. Ohio 2008), *aff'd*, 622 F.3d 524 (6th Cir. 2010).

As to plaintiffs' second argument, they point to only one instance in which Martin's opinion

---

F. Supp. 2d 1218 (D. Nev. 2010); N.H. REV. STAT. ANN. § 358A:10; N.J. STAT. ANN. § 56:8-19; N.M.
STAT. ANN. § 57-12-10; N.Y. GEN. BUS. LAW § 349(h); N.C. GEN. STAT. § 75-16; OHIO REV. CODE
ANN. § 1345.09; OKLA. STAT. tit. 15, § 761.1; OR. REV. STAT. § 646.638; 73 PA. STAT. ANN. § 201-9.2;
R.I. GEN. LAWS § 6-13.1-5.2(a); S.C. CODE ANN. § 39-5-140(a); S.D. CODIFIED LAWS § 37-24-31; TENN.
CODE ANN. § 47-18-109(a)(1); TEX. BUS. & COM. CODE ANN. § 17.50(a); UTAH CODE ANN. § 13-11-19;
VT. STAT. ANN. tit. 9, § 2461; VA. CODE ANN. § 59-1-204; WASH. REV. CODE § 19.86.090; W. VA.
CODE § 46A-6-106; WIS. STAT. § 100.20(5); WYO. STAT. ANN. § 40-12-108(a).  *But cf.* IOWA CODE §
714.16(7).

    [4]Plaintiffs also argue that Dr. Martin's opinion would essentially foreclose a class action in any
consumer litigation.  Whether or not this conclusion flows from Dr. Martin's opinion, it is an argument
directed at the merits of the class certification motions.  In other words, this argument may affect the
weight the Court gives Martin's opinion, but it does not go to the admissibility of that opinion.

is apparent to a lay person.  Even if their argument on this one point is correct, they do not explain how this renders the entirety of Martin's reports and testimony irrelevant under Rule 702.

2.    *Reliability*

Plaintiffs also argue that Dr. Martin's reports and testimony fail the reliability prong of the *Daubert* inquiry because his opinions are based on insufficient facts and are not based on a meaningful scientific study.  These arguments are also without merit.

*a. Insufficient Facts*

Plaintiffs argue that Martin's opinions are based on insufficient facts because he did not review certain documents regarding the FCC's action, nor did he review OnStar's marketing plans.  However, Martin's report indicates that he did review a number of documents related to the FCC action, as well as documents produced by defendants such as promotional materials and owner's guides.  He also reviewed the depositions of witnesses and of the named plaintiffs.  These, opined Martin, allowed him to conclude that there exist numerous individual factors with respect to each named and purported class plaintiff.  Rule 702 requires that an expert's opinion be based on "*sufficient* facts or data," not necessarily complete facts or data.  Thus, "an expert need not consider every possible factor to render a 'reliable' opinion;" rather the expert need only "consider enough factors to make his or her opinion sufficiently reliable in the eyes of the court."  *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1355 (Fed. Cir.2005); *cf. In re Stand 'N Seal Prods. Liability Litig.*, 623 F. Supp. 2d 1355, 1368 (N.D. Ga. 2009).  Again, Dr. Martin's conclusion is that a number of individual issues predominate over the common issues, including issues relating to the information available to consumers.  The documents Martin did review, including the named plaintiffs' depositions, coupled with his expertise in marketing, are sufficient to allow him to

propound his opinions, even if there exists other evidence which he could have, but did not, consider.  *Cf. Stand 'N Seal Prods.*, 623 F. Supp. 2d at 1368.  If Martin's failure to consider these other sources gives Dr. Martin's opinion less weight, that is a matter the Court can take into consideration in addressing plaintiffs' class certification motions; it does not render Martin's opinion inadmissible.

### b.  Meaningful Scientific Study

Finally, plaintiffs argue that Dr. Martin's opinions are unreliable because he was not "'as careful [in performing his analysis for this case] as he would be in his regular professional work outside paid litigation consulting.'" Pl.s' Br., at 14 (quoting FED. R. EVID. 702, advisory committee note) (alteration by plaintiffs).  Specifically, they point to Martin's deposition testimony in which he testified that a "meaningful scientific study of consumer behavior regarding . . . the purchase of vehicles with OnStar telematics" would require a complete literature search, conducting focus groups, implementing and administering a questionnaire and conducting an appropriate survey, none of which was done by Martin.  Martin's testimony on this matter, however, was in response to a question from plaintiffs' counsel asking what he would do "*[i]f* you were trying to do a study regarding OnStar consumers . . . ." Pl.s' Br., Ex. 2, at 96 (emphasis added).  However, Martin did not testify that it was necessary to do such a study to reach the conclusions offered in his report. Again, the point of Martin's report is not on how the various marketing factors affected either the named or purported class plaintiffs.  That is a matter going to the merits of the case.  Rather, Martin's point is simply that these various factors differ from individual to individual.  While a marketing "study regarding OnStar consumers" might be necessary to explain how the marketing factors actually impacted consumers, plaintiffs do not explain why such a study was necessary for

Martin to be able to conclude that such individualized factors exist and differ from consumer to consumer. Nor do the reports or testimony of plaintiff's experts, who likewise conducted no such studies, suggest that Martin's opinion is unreliable on this basis.

D.    *Conclusion*

For the reasons explained above, Martin's reports and testimony may assist the Court in determining the class certification motions, and they are based on sufficient information and reliable methods to be admissible under the relaxed *Daubert* standard applicable here. Accordingly, the Court should deny plaintiffs' motion to strike.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address

specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 1/12/11

The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record and  by
electronic means or U.S. Mail on January 12, 2011.

s/Eddrey Butts
Case Manager